**ATLANTIC STATES LEGAL FOUNDATION, INC., Plaintiff–Appellant,**

v.

**UNITED MUSICAL INSTRUMENTS, U.S.A., INC., Defendant–Appellee.**

No. 93–4379.

United States Court of Appeals, Sixth Circuit.

Argued March 10, 1995.

Decided Aug. 3, 1995.

Jeffrey A. Kodish, Sowash, Carson & Shostak, Athens, OH, Charles M. Tebbutt (argued and briefed), Allen, Lippes & Shonn, Buffalo, NY, for plaintiff-appellant.

Keith L. Pryatel (argued and briefed), Harley M. Kastner, Millisor & Nobil, Cleveland, OH, for defendant-appellee.

Anne S. Almy (briefed), U.S. Dept. of Justice, Mark R. Haag, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, for amicus curiae U.S.

Before: KENNEDY and NORRIS, Circuit Judges; TAYLOR, District Judge.*

ALAN E. NORRIS, Circuit Judge.

Plaintiff, Atlantic States Legal Foundation, Inc. ("ASLF"), appeals from the dismissal of its complaint alleging that defendant, United Musical Instruments, U.S.A., Inc. ("UMI"), violated the Emergency Planning and Community Right–to–Know Act of 1986 ("EPCRA"), 42 U.S.C. §§ 11001–11050 (1988 & Supp. V 1993), by failing to file required reports about its storage and release of toxic chemicals. ASLF contends that the district court erred in concluding that the complaint was not timely filed. UMI defends that conclusion and offers alternative reasons to affirm the dismissal. We agree that the district court correctly dismissed the complaint, although our reasoning differs from that of the district court.

## I.

Section 313 of EPCRA requires owners and operators of facilities using specified toxic chemicals to file toxic chemical release forms, which provide information about the storage and release of those chemicals, with the federal Environmental Protection Agency ("EPA") and designated state officials. 42 U.S.C. §§ 11023(a), 11023(g). The EPA created the "form R" as the toxic chemical release reporting form. 40 C.F.R. § 372.85 (1994). Form Rs for a given calendar year are due the following July 1. 42 U.S.C. § 11023(a). Violators of § 11023 are liable to the United States for civil penalties of up to $25,000 for each violation. 42 U.S.C. § 11045(c)(1). The EPA can seek civil penalties either administratively or by bringing an action in federal district court. 42 U.S.C. § 11045(c)(4).

EPCRA also authorizes citizen enforcement suits. The citizen suit provision at issue in this case provides, "any person may commence a civil action on his own behalf against ... [a]n owner or operator of a facility for failure to ... [c]omplete and submit a toxic chemical release form under section 11023(a) of this title." 42 U.S.C. § 11046(a)(1)(A)(iv).[1] District courts have jurisdiction over citizen enforcement actions "to enforce the requirement concerned and to impose any civil penalty provided for violation of that requirement." 42 U.S.C. § 11046(c). Prevailing parties may recover reasonable costs and attorneys' fees. 42 U.S.C. § 11046(f). A citizen may not commence an enforcement action until sixty days after he or she provides notice of the alleged violation to the EPA, state officials, and the alleged violator. 42 U.S.C. § 11046(d). Citizens may not sue for the redress of violations that the EPA is addressing administratively or in litigation in federal court. 42 U.S.C. § 11046(e).

UMI, a manufacturer of musical instruments, uses some of the specified toxic chemicals at its production facility in Eastlake, Ohio. ASLF is a not-for-profit organization based in Syracuse, New York. On July 17, 1992, ASLF notified UMI of its intention to file a citizen enforcement action against UMI for violating EPCRA § 313. Specifically, the notice stated that UMI had failed to file the required form Rs for the years 1987–1990. It is undisputed that at the time it received the notice, UMI had not filed these forms. On July 21, 1993, ASLF filed its complaint alleging that UMI failed to timely submit form Rs for the years 1988–1991 and seeking declaratory judgment, injunctive relief, imposition of civil penalties, and attorneys' fees. The complaint acknowledged that UMI had submitted the required forms after it received ASLF's notice of intent to sue.

UMI filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) and (6), arguing (1) that the applicable statute of limitations barred the complaint, (2) that ASLF failed to comply with EPCRA's jurisdictional requirements to sue, (3) that the district court lacked subject matter jurisdiction, and (4) that the complaint was moot. The district court, "borrowing" a one-year statute of limitations from Ohio law, concluded that the claim was indeed time-

---

* The Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. EPCRA also authorizes citizen suits for failure to submit various other required information. 42 U.S.C. §§ 11046(a)(1)(A)(i)-(iii).

barred and granted the motion to dismiss.[2] The district court did not reach UMI's other asserted grounds for dismissal.

## II.

■ On appeal UMI argues, *inter alia,* for affirmance on the alternative ground that EPCRA does not authorize citizen enforcement actions for purely historical violations of § 313. ASLF addressed this argument in its reply brief to this court.[3] Because we agree with UMI that EPCRA does not allow citizen suits for past violations that have been cured by the date the action commences, we hold that the dismissal of ASLF's complaint was proper. Therefore, we affirm the district court's judgment on an alternative ground. *See Allen v. Diebold, Inc.,* 33 F.3d 674, 676 (6th Cir.1994) (noting that this court has power "to affirm on alternative grounds not reached by the court below").[4]

In determining the meaning of a statute, we of course begin with its plain language. *Equal Employment Opportunity Comm'n v. Monclova Township,* 920 F.2d 360, 362 (6th Cir.1990). EPCRA authorizes citizen suits for "failure to ... [c]omplete and submit [form Rs] under section 11023(a) of this title." 42 U.S.C. § 11046(a)(1)(A)(iv). Although § 11023(a) requires submission of the form Rs by a certain date, the citizen suit provision emphasizes the completing and submitting of the forms. This language suggests that only the failure to complete and submit the required forms can provide the basis for a citizen suit. While among the provisions of § 11023(a) is the requirement that the form be filed by July 1 for the preceding calendar year, the citizen suit provision speaks only of the completion and filing of the form. The form is completed and filed even when it is not timely filed.

If Congress had intended to authorize citizen suits for any violation of § 11023(a)—such as a late submission—it could easily have done so. For example, EPCRA authorizes civil penalties against any person "who violates any requirement" of § 11023. 42 U.S.C. § 11045(c)(1). Congress authorized the EPA to bring actions to assess and collect "any civil penalty for which a person is liable." 42 U.S.C. § 11045(c)(4). Rather than give citizen plaintiffs this same broad power, however, Congress limited citizen suits by emphasizing that it is the failure to submit the requisite forms that gives rise to a citizen action. Congress did not authorize citizen suits for other violations of § 11023. This difference between the grants of authority to the EPA and citizen plaintiffs is significant because it indicates a congressional intent to limit citizen suits to ongoing violations and to give the EPA sole authority to seek penalties for historical violations.

UMI failed to submit form Rs in a timely manner but did file them after receiving notice from ASLF. We see no basis upon which one must conclude that Congress, when contemplating citizen enforcement suits, intended such a late submission to be the equivalent of a complete failure to submit the information.

Opinions of the United States Supreme Court support this interpretation. In *Gwaltney of Smithfield v. Chesapeake Bay Found. Inc.,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), the Court held that the Clean Water Act, 33 U.S.C. §§ 1251–1387 (1988 & Supp. V 1993), does not authorize citizen enforcement suits for wholly past violations. The Clean Water Act prohibits the unauthorized discharge of pollutants into navigable waters. *Gwaltney,* 484 U.S. at 52, 108 S.Ct.

---

2. The district court applied the rule that when Congress has not expressly provided a statute of limitations, courts must borrow the most closely analogous statute of limitations under state law. *Reed v. United Transp. Union,* 488 U.S. 319, 323–24, 109 S.Ct. 621, 624–25, 102 L.Ed.2d 665 (1989). The court rejected ASLF's argument that 28 U.S.C. § 2462, which generally provides a five-year statute of limitations for actions to enforce a civil penalty, applies to citizen enforcement suits under EPCRA.

3. Although ASLF devotes substantial attention to this issue in its reply brief, it argues that space constraints prevented "full briefing." ASLF Rep. Br. at 17. This contention is not persuasive in view of the fact that ASLF's 18–page reply brief falls seven pages short of the permissible limit. *See* Fed.R.App.P. 28(g).

4. We do not reach the issue of the limitations period for citizen enforcement suits under EPCRA, and we express no opinion on it.

at 378–79 (citing 33 U.S.C § 1311(a)). Its citizen enforcement provision permits citizens to bring suit against any person "alleged to be in violation." *Id.* at 54, 108 S.Ct. at 380 (citing 33 U.S.C. § 1365(a)). Like EPCRA, the Clean Water Act requires that citizens provide the alleged violator, the EPA, and state officials, with sixty days' notice of their intent to sue. *Id.* at 59, 108 S.Ct. at 382 (citing 33 U.S.C. § 1365(b)(1)(A)). Also like EPCRA, the Clean Water Act prohibits citizen suits for violations that are the basis of an EPA enforcement action. *Id.* at 59–60, 108 S.Ct. at 382–83 (citing 33 U.S.C. § 1365(b)(1)(B)).

The Court held that the Clean Water Act authorizes citizens to seek civil penalties "only in a suit brought to enjoin or otherwise abate an ongoing violation." *Id.* at 59, 108 S.Ct. at 382. It recognized that "[a]ny other result would render incomprehensible [the] notice provision." *Id.* The Court concluded as follows:

> If the [EPA] or the State commences enforcement action within the 60–day period, the citizen suit is barred, presumably because governmental action has rendered it unnecessary. It follows logically that the purpose of notice to the alleged violator is to give it an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit. If we assume ... that citizen suits may target wholly past violations, the requirement of notice to the alleged violator becomes gratuitous.

*Id.* at 59–60, 108 S.Ct. at 382–83 (footnote and citation omitted).

The Court reiterated this reasoning in *Hallstrom v. Tillamook County,* 493 U.S. 20, 33, 110 S.Ct. 304, 312, 107 L.Ed.2d 237 (1989), in which it held that compliance with the sixty-day notice requirement under the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. §§ 6901–6992k (1988 & Supp. V 1993), is a mandatory precondition for commencing a citizen suit under that statute. The Court recognized that notice both allows government agencies to take action and lets the alleged violator cure the violation, either of which would obviate the need for a citizen suit. *Id.* at 29, 110 S.Ct. at

310 (citing *Gwaltney,* 484 U.S. at 60, 108 S.Ct. at 383).

Moreover, the Court in *Gwaltney* held that interpreting the Clean Water Act to allow citizen suits for purely historical violations "would create a second and even more disturbing anomaly." *Gwaltney,* 484 U.S. at 60, 108 S.Ct. at 383. It noted, "The bar on citizen suits when government enforcement action is under way suggests that the citizen suit is meant to supplement rather than to supplant governmental action." *Id.* After pointing out that the Act's legislative history supports this view, the Court concluded that "[p]ermitting citizen suits for wholly past violations ... could undermine the supplementary role envisioned for the citizen suit." *Id.* The Court expressed particular concern about the potential of citizen suits to inhibit the ability of government officials to exercise discretion in using their enforcement powers. For example, it pointed out that the EPA might deem it in the public interest to forego civil penalties in a particular case in return for some concession from the violator. *Id.* at 61, 108 S.Ct. at 383. Allowing a citizen to sue years later for the same violation would "curtail[ ] considerably" such exercises of discretion and thereby "change the nature of the citizens' role from interstitial to potentially intrusive." *Id.* at 61, 108 S.Ct. at 383. The Court concluded that Congress could not have intended such a result. *Id.*

ASLF contends that differences between the language of the Clean Water Act and the language of EPCRA render *Gwaltney* to this case. EPCRA authorizes citizen actions for an owner's or operator's "failure to" submit certain information, while the Clean Water Act authorizes citizen suits against persons "alleged to be in violation" of certain of its provisions. 42 U.S.C. § 11046(a)(1)(A), 33 U.S.C. § 1365(a)(1). As ASLF points out, several district courts have found this difference to be determinative. *See, e.g., Atlantic States Legal Found., Inc. v. Whiting Roll–Up Door Mfg. Co.,* 772 F.Supp. 745, 752 (W.D.N.Y.1991) ("The natural reading of the EPCRA provision at least would seem to include past acts of noncompliance, while a natural reading of the Clean Water Act provision, as the Supreme Court has held, indi-

cates that the statute contemplates only prospective relief.").

We reject this rather hypertechnical parsing of the language of the statutes in favor of the most natural reading of EPCRA, which weighs against allowing citizen suits for purely historical violations. As the Supreme Court noted in the context of the Clean Water Act's citizen suit provision, "Congress could have phrased its requirements in language that looked to the past ..., but it did not choose this readily available option." *Gwaltney*, 484 U.S. at 57, 108 S.Ct. at 381.

ASLF also argues that subsequent congressional action has undercut *Gwaltney's* rationale. Specifically, after *Gwaltney*, Congress amended the Clean Air Act, 42 U.S.C. §§ 7401–7642 (1988 & Supp. V 1993), explicitly to allow citizen suits for purely historical violations, while leaving intact that Act's sixty-day notice requirement. *See* 42 U.S.C. § 7604(a).[5] ASLF relies upon *Whiting Roll-Up*, which held that this amendment "undercuts the importance of the Supreme Court's discussion in *Gwaltney* that Congress would not have placed such a notice provision in a statute where it also intended [to] authorize citizen suits for past violations." 772 F.Supp. at 753.

Although this argument has a certain logic, it is unpersuasive since one can argue with at least equal force that by amending the Clean Air Act, but failing also to amend EPCRA, Congress intended to limit EPCRA's citizen suit provision to violations existing at the time the suit is filed. Allowing citizen suits for past violations would render superfluous EPCRA's requirement of sixty-days' notice to the alleged violator. In the absence of explicit congressional language mandating such a result—as in the amended Clean Air Act—we must reject ASLF's argument. *See Greenpeace, Inc. v. Waste Technologies Indus.*, 9 F.3d 1174, 1179 (6th Cir.1993) ("We must interpret [a] statute as whole, making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless, or superfluous."). Accordingly, we consider the

conclusion in *Gwaltney* about the significance of the Clean Water Act's notice requirement equally applicable to EPCRA.

In addition, the discussion in the *Gwaltney* opinion concerning the supplemental role of citizen suits applies in the EPCRA context as well. EPCRA, like the Clean Water Act, prohibits citizen suits once the EPA has commenced an enforcement action. 42 U.S.C. § 11046(e). This prohibition indicates that Congress envisioned citizen suits as primarily a means to enforce EPCRA when a violation continues because the EPA has failed to enforce the Act. If the mandatory notice inspires the violator to submit the required information, the violation no longer exists, and a citizen enforcement suit is unnecessary. Similarly, if the EPA concludes that it is in the public interest to refrain from seeking civil penalties against past violators now in compliance, it should be free to do so without concern about the possible impact of future citizen actions against the former violator.

ASLF contends that EPCRA's legislative history supports allowing citizen enforcement suits for wholly past violations. The only thing that is clear from this history, however, is that Congress thought it important that the public receive the required information for use in developing emergency response plans for hazardous chemical releases. *See, e.g.*, H.R. Conf. Rep. No. 962, 99th Cong., 2d Sess. 281, 309–310 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3374, 3402–03. Once the forms providing the information have been filed, this congressional goal has been achieved, and an enforcement suit is unnecessary. We discern nothing in the legislative history that indicates that Congress intended to allow citizens to sue in such circumstances. Although civil penalties for purely historical violations may be appropriate in some cases, the congressional scheme leaves to the EPA, with its broad perspective on the entire spectrum of enforcement and compliance, discretion to determine those violators whose conduct warrants such penalties.

---

**5.** As amended, the Clean Air Act authorizes citizen suits against any person "who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation [of an emission standard]." 42 U.S.C. § 7604(a)(1).

In sum, the plain language and structure of EPCRA lead us to conclude that citizen plaintiffs may not bring actions that seek civil penalties for purely historical violations.

### III.

■ In passing, we note that an additional and wholly independent reason supports the dismissal of ASLF's allegation that UMI failed to file a form R for the 1991 calendar year. That is, the district court lacked jurisdiction over the alleged 1991 violation because ASLF failed to provide adequate presuit notice of that violation as required by EPCRA. ASLF's notice, dated July 17, 1992, stated its intention to hold UMI accountable for violating EPCRA § 313 by failing to file form Rs for calendar years 1987–1990. The notice made no specific mention of a 1991 violation, although it noted that UMI "may also be responsible for violations not yet known to ASLF of other EPCRA reporting requirements." ASLF's complaint, however, alleged violations for calendar years 1988–1991.

In the RCRA context, the Supreme Court held that "the notice and 60–day delay requirements are mandatory conditions precedent to commencing suit under the … citizen suit provision; a district court may not disregard these requirements at its discretion." *Hallstrom v. Tillamook County,* 493 U.S. at 31, 110 S.Ct. at 311. Accordingly, when a citizen plaintiff fails to provide the required notice, "the district court must dismiss the action as barred by the terms of the statute." *Id.* at 33, 110 S.Ct. at 312.[6]

As the structure of EPCRA's notice provision is substantively identical to the analogous provision of RCRA,[7] it follows that suf-

ficient notice is also a mandatory prerequisite to filing an enforcement action under EPCRA. ASLF does not dispute this obvious implication of *Hallstrom* but contends the notice of its intention to hold UMI liable for "violations not yet known" was sufficient to create jurisdiction over the alleged 1991 violation. We disagree. One of the important purposes of the notice requirement under environmental statutes is to facilitate "dispute resolution by EPA negotiation [and thereby] reduce the volume of costly litigation." *Walls v. Waste Resource Corp.,* 761 F.2d 311, 317 (6th Cir.1985). Here, ASLF's failure to include the 1991 violation in its notice may have contributed to the EPA's decision not to act. Moreover, the vague warning of possible other claims failed to inform UMI of the year of the additional alleged violation or even the specific EPCRA reporting requirement involved. For these reasons, the notice of the alleged 1991 violation was inadequate.

### IV.

The order of the district court dismissing ASLF's complaint is **affirmed.**

---

6. Although the Court did not determine whether the notice provision "is jurisdictional in the strict sense of the term," it left no doubt that failure to comply requires dismissal. *Hallstrom,* 493 U.S. at 31, 110 S.Ct. at 311.

7. EPCRA's notice provision states as follows: "[n]o [citizen] action may be commenced … prior to 60 days after the plaintiff has given notice of the alleged violation to the Administrator, the State in which the alleged violation occurs, and the alleged violator." 42 U.S.C. § 11046(d).

The RCRA provision at issue in *Hallstrom*— which Congress subsequently amended—stated as follows:
  (b) Actions prohibited.
    No action may be commenced under paragraph (a)(1) of this section—
    (1) prior to sixty days after the plaintiff has given notice of the violation (A) to the Administrator [of the EPA]; (B) to the State in which the alleged violation occurs; and (C) to any alleged violator of such permit, standard, regulation, condition, requirement, or order.
*Hallstrom,* 493 U.S. at 25–26, 110 S.Ct. at 308–09 (citing 42 U.S.C. § 6972(b)(1)).