William FRILLING, et al., Plaintiffs,

v.

HONDA OF AMERICA MFG.,
INC., Defendant.

No. C–3–96–181.

United States District Court,
S.D. Ohio,
Western Division.

Aug. 26, 1998.

Rodney Robinson Blake, Jr., Sidney, OH, Kevin Halsey, Portland, OR, AJ Blake, Portland, OR, for William Frilling, Judy Frilling, Ralph Katterhenry, plaintiffs.

Elizabeth E Tulman, Mary Ellen Fairfield, Anthony Joseph Giuliani, Vorys Sater Seymour & Pease—2, Columbus, OH, for Honda of America Manufacturing Inc, defendant.

ENTRY SUPPLYING EXPANDED OPINION TO ORDER OF MARCH 31, 1998 (DOC. # 42); AS STATED PREVIOUSLY, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SUSTAINED; JUDGMENT TO ENTER IN FAVOR OF THE DEFENDANT AND AGAINST THE PLAINTIFFS; TERMINATION ENTRY

RICE, Chief Judge.

This case arises from the existence of allegedly impermissible pollutants in sanitary and industrial wastewater discharged from the Engine Plant owned by Defendant Honda of America Manufacturing, Inc. ("Honda"). Honda discharged its wastewater into the publicly owned treatment works ("POTW") operated by the Village of Anna, Ohio ("Anna"). Anna, in turn, discharged the wastewater from its POTW into Clay Creek, which runs through land owned by Plaintiff William Frilling, Plaintiff Judy Frilling and Plaintiff Ralph Katterhenry.

This litigation is brought pursuant to the citizen suit provisions of the Clean Water Act ("CWA"), 33 U.S.C. § 1365. The Plaintiffs have alleged that the Defendant, Honda of America Manufacturing Co., violated a number of provisions of a discharge permit it was issued by the Ohio Environmental Protection Agency ("Ohio EPA"). This permit allowed the Defendant to discharge certain wastes to Anna's POTW.

On October 21, 1996, the Court sustained in part and overruled in part a motion by the Defendant to dismiss the Plaintiffs' Amended Complaint (Doc. # 3). The Court, in short, sustained the dismissal of all of the claims raised in the Amended Complaint save three. These claims alleged that the Defendant discharged an excess amount of phenol and total toxic organics, as evidenced by the Defendant's July–December, 1992, self-monitoring report (Doc. # 3, ¶¶ 50–51); and that the Defendant submitted late reports, as evidenced by an April 21, 1993, report that was filed four months late (id., ¶ 60).

Pending before the Court is the Defendant's Motion for Summary Judgment (Doc. # 25), by which it seeks a summary judgment in its favor on these last three claims. According to the Defendant, the Plaintiffs do not have standing to seek any relief against the Defendant pursuant to the CWA. It argues that, to have standing to sue under the CWA, there must be an on-going violation or at least some likelihood that past violations will reoccur. In its Motion, it sets forth the argument that there is no evidentiary support for either such finding.

By Entry dated March 31, 1998 (Doc. # 42), the Court indicated that it was persuaded that the Defendant's Motion was meritorious and would have to be sustained. At that time, the Court stated that it would thereafter supply the reasoning undergirding its decision to sustain this Motion, in the form of an expanded opinion. By means of this Entry, the Court supplies that reasoning.

I.  *Standard for Summary Judgment*

Before proceeding to an analysis of the Defendant's Motion for Summary Judgment, the Court will set forth the proper standard of review. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial." quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 [6th Cir.1987] ). The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law under Fed.R.Civ.P. 50. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See*

*also Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff"). Rather, Rule 56(e) "requires the non-moving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2726.

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also L.S. Heath*

*& Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## II. *Background Facts and Procedural Posture*

This case concerns emissions from the Defendant's Engine Plant in Anna. Until September, 1996, the Plant discharged its wastewater into Anna's POTW. Pursuant to Indirect Discharge Permit No. 1PB00004100*AP ("the 1990 Permit"), which was effective from April 19, 1990, until April 16, 1995, Defendant was permitted to discharge certain wastewater into the POTW (Doc. # 25, Exh. 1–A). When this permit expired, it was replaced by Indirect Discharge Permit No. 1PB00004100*BP ("the 1995 Permit"), which bore an effective date of June 1, 1995, until May 28, 2000 (Doc. # 25, Exh. 1–B). As with the 1990 Permit, the latter permit allowed Defendant to discharge wastewater into the Anna POTW.

Although the 1995 Permit was not set to expire until May of 2000, the Defendant asked the State to revoke the Permit, be-cause it had stopped discharging wastewater into the Anna POTW in late September, 1996 (Kreglow Aft., ¶ 4).[1] Revocation was accomplished on December 9, 1996 (Doc. # 25, Exh. 1–C).

The Defendant's Engine Plant now discharges its wastewater for final treatment to the City of Sidney, Ohio (*id.*, ¶ 5). This new route has been in place since September, 1996. The Defendant's authorization to discharge to the Sidney POTW is derived from a permit issued by the City of Sidney ("the Sidney Permit"). The terms of the Sidney Permit are different from the terms of the 1990 Permit or the 1995 Permit.[2]

The Plaintiffs filed their Complaint (Doc. # 1) on May 23, 1996. As stated, there are only three claims remaining in this litigation. *First*, the Plaintiffs claim that the Defendant violated the CWA when it discharged an amount of phenol in excess of that allowed under its indirect discharge permit, as evidenced by a 1992 self-monitoring report (Amended Complaint, ¶ 50). *Second*, the Plaintiffs claim that the Defendant violated the CWA when it discharged an amount of total toxic organics in excess of that allowed under its indirect discharge permit, as evidenced by a 1992 self-monitoring report (*id.*, ¶ 51). *Third*, the Plaintiffs claim that the Defendant violated the CWA by submitting reports beyond the time limits required in its indirect discharge permits, as evidenced by a report filed in April, 1993, which should have been submitted no later than December, 1992 (*id.*, ¶ 60).

■ All of the other claims in this case have been dismissed. The basis for the

---

1. In fact, the sewer line connecting the Engine Plant to the Anna POTW was demolished at that time. *See* Kreglow Aff. at ¶ 4 (Doc. # 25, Exh. 1–C).

2. The terms of the Sidney Permit itself have also been in flux. The first permit, for instance, did not contain phenol limits (Doc. # 30, Exh. 1–B). The second permit contained very strict phenol requirements (Doc. # 30, Exh. 1–A). The third—and current—permit contains more liberal phenol requirements (Doc. # 37, Exh. B). For reasons expressed later in this Entry, the precise requirements of the Sidney Permit, in its various incarnations, is ultimately not relevant to the issue posed by the Defendant's Motion for Summary Judgment, the resolution of which is the focus of this Entry.

dismissal of these other claims was the Court's conclusion that the Plaintiffs had failed to provide the Defendant with the 60–day notice that is required under the CWA. The Court has held, in a companion lawsuit to the instant one (*Frilling v. Village of Anna*, No. C–3–95–194), that CWA plaintiffs must strictly comply with the notice requirements contained within the statute and the applicable regulations. *See Frilling v. Village of Anna*, 924 F.Supp. 821, 832–35 (S.D.Ohio 1996). The failure to comply with the notice requirement, the Court held, warrants the dismissal of the claims set forth in the parties' complaint.

By Decision dated October 21, 1996 (Doc. # 13), the Court concluded that the Plaintiffs in this case failed to provide the Defendant with the notice required by law, except with respect to the three claims mentioned above. Specifically, the Court concluded that the Plaintiffs had failed to reference any dates of alleged violations in their notice letter. By failing to provide information regarding the dates of alleged violations, the Plaintiffs failed to meet the requirements imposed by the applicable regulation. *See* 40 C.F.R. § 135.3 (notice regarding alleged violation of a standard or limitation "shall include . . . the date or dates of such violation . . ."). Accordingly, in this October 21, 1996, Decision, the Court ordered the Plaintiffs' other claims dismissed, but without prejudice to their renewal in a separate lawsuit. No such lawsuit has been filed.

III. *Applicable Law*

■ The Plaintiffs' cause has been brought pursuant to the citizen suit provisions of the CWA. The first two indirect discharge permits at issue in this case were issued by the Ohio EPA pursuant to authority granted by the CWA, and the third permit was issued by the City of Sidney. The CWA permits qualified agencies to issue National Pollutant Discharge Elimination System ("NPDES") permits that authorize the discharge of pollutants, subject to enumerated conditions. 33 U.S.C. § 1342. Plaintiffs assert a cause of action under the CWA for the Defendant's alleged violations of the terms of their CWA-issued permits.

If the government does not act to enforce specific terms of the CWA, a suit may be brought by a private citizen, acting as a "private attorney general." The CWA provides that a private citizen may commence a civil action against any person "alleged to be in violation of an effluent standard or limitation under [the CWA]." 33 U.S.C. § 1365(a)(1). A successful resolution of such a suit can result in the imposition of injunctive relief and civil penalties. 33 U.S.C. § 1365(a).

There are a number of prerequisites to such a citizen suit, however. As an initial matter, the CWA requires that a private plaintiff give notice of the alleged violation to the appropriate federal and state agencies, and also to the alleged violator. 33 U.S.C. § 1365(b)(1)(A). Such notice must be given sixty days before the plaintiffs may file suit to remedy these alleged violations. *Id.* As stated above, a private plaintiff may not bring an independent suit if the appropriate federal or state agency "has commenced and is diligently prosecuting" a case seeking to require compliance with the applicable law. 33 U.S.C. § 1365(b)(1)(B).

Another important limitation exists. The statute limits citizen suits to those against a person "who is alleged to be in violation" of an effluent standard or limitation or of an order issued by a federal or state agency with respect to such a standard or limitation. 33 U.S.C. § 1365(a)(1). The Supreme Court has interpreted the "to be in violation" language to mean that citizens may not sue on "wholly past violations" of the CWA. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation*, 484 U.S. 49, 64, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). Rather, there must be "an ongoing violation." *Id.* at 59, 108 S.Ct. 376.

To interpret the statute to allow for the filing of citizen suits addressing past violations, wrote Justice Marshall, "would render incomprehensible [the] notice provision, which requires citizens to give 60 days' notice of their intent to sue." *Id.* The statute itself does not permit a citizen to bring a suit if the government commences a suit within the 60–day period, "presumably because governmental action has rendered it unnecessary." *Id.* at 59–60, 108 S.Ct. 376 (citing 33 U.S.C. § 1365(b)(1)(B)). "It follows logically that the purpose of notice to the violator is to give it an opportunity to bring itself into complete compliance with the Act and thus render unnecessary a citizen suit." *Id.* at 60, 108 S.Ct. 376. Justice Marshall concluded, "If we assume . . . that citizen suits may target wholly past violations, the requirement of notice to the alleged violator becomes gratuitous." *Id.*

On remand of the *Gwaltney* case, the Fourth Circuit interpreted the Supreme Court's opinion to require CWA plaintiffs to ultimately prove, as an element of their claim, that violations were ongoing at the time suit was filed. It developed a two-part test to determine whether a plaintiff can prove an ongoing violation of the CWA at trial. *First,* the plaintiff can prove "violations that continue on or after the date the complaint is filed." *Chesapeake Bay Foundation v. Gwaltney of Smithfield,* 844 F.2d 170, 171 (4th Cir.1988). *Second,* the plaintiff can adduce evidence "from which a reasonable trier of fact could find a continuing likelihood of recurrence in intermittent or sporadic violations." *Id.* at 171–72. "Intermittent or sporadic violations," the court explained, "do not cease to be ongoing until the date when there is no real likelihood of repetition." *Id.* at 172. Having set forth the applicable law, the Fourth Circuit remanded the case to the District Court to apply these standards to the facts of the case.

The Fourth Circuit's reasoning has been widely adopted. *See, e.g., Natural Resources Defense Council v. Texaco Refin-ing & Marketing,* 2 F.3d 493, 501 (3d Cir.1993); *Carr v. Alta Verde Industries,* 931 F.2d 1055, 1062 (5th Cir.1991); *Atlantic States Legal Foundation v. Tyson Foods,* 897 F.2d 1128, 1134 (11th Cir.1990); *Sierra Club v. Union Oil Co.,* 853 F.2d 667, 671 (9th Cir.1988). The court's analysis was adopted by the Sixth Circuit in an unpublished opinion. *Allen County Citizens for the Environment v. BP Oil Co.,* 1992 WL 138410 (6th Cir. June 18, 1992), *aff'g* 762 F.Supp. 733 (N.D.Ohio 1991). The Court concludes that, if again faced with the question, the Sixth Circuit would approve of this analysis and, accordingly, the Court adopts it for purposes of this case.

■ The Fourth Circuit, upon an appeal from the aforementioned remand, concluded that this test must be met as to each parameter of a permit that is alleged to be the subject of ongoing violations. In other words, if a defendant has violated different aspects of a permit in the past, but there are ongoing violations of only one portion of the permit, then a citizen suit may proceed *only* with respect to the portion that, at the time the suit was commenced, was the subject of an ongoing violation. *See Chesapeake Bay Foundation v. Gwaltney of Smithfield,* 890 F.2d 690, 697–98 (4th Cir.1989). The court reached this conclusion by examining the structure of the CWA, which "involves identifying specific pollutants and setting a permit limitation for each pollutant of concern." *Id.* at 698. Based on this structure, the court reasoned that it "makes sense within this scheme to view each parameter separately for purposes both of determining ongoing violation[s] and of assessing penalties." *Id.*

The parameter-by-parameter approach to determining whether there is an ongoing violation was adopted by the District Court in the *Allen County Citizens* case. The Sixth Circuit, in its unpublished order affirming the District Court, indicated that it fully adopted the reasoning set forth by the District Judge in his opinion in that

case. *See Allen County Citizens,* 1992 WL 138410 at *2. This embrace, of course, would also include the District Court's test for examining the existence of an ongoing violation by looking at it on a parameter-by-parameter basis.

■ The Court concludes that the parameter-by-parameter approach is the proper method for determining whether there exists an "ongoing violation." As an initial matter, the Sixth Circuit's seeming approval of this analysis is of primary importance. Because the Sixth Circuit's opinion was not published, it does not carry the precedential weight of a standard Sixth Circuit opinion. *See* 6th Cir.Loc.R. 24(c). Nevertheless, although disfavored, citation to unpublished authority is allowed where the facts of an unpublished case are similar to those of the case at bar and the reasoning of the unpublished opinion is sound. *See Oviedo v. Jago,* 809 F.2d 326, 328 n. 3 (6th Cir.1987). The issue presented in the *Allen County Citizens* case is the same as that presented here. Moreover, review of the Fourth Circuit's reasoning impresses the Court that the parameter-by-parameter approach is sound.

■ The violation which is being challenged must be "ongoing" at the time that the lawsuit is commenced. *E.g., Carr,* 931 F.2d at 1064–65. If a violation is purely historical, then the suit is not cognizable under 33 U.S.C. § 1365. If a polluter complies with the law and with the terms of its discharge permit *after* the lawsuit has been filed, said compliance may render moot any request for injunctive relief. However, said compliance will not render the entire lawsuit moot, because the plaintiff will still be able to seek the imposition of civil fines for the previous violation. A plaintiff's burden at trial is to demonstrate that a violation was ongoing at the time of the filing of the action. At the summary judgment stage, the defendant bears the burden of demonstrating that the evidence of record does not raise a genuine issue of material fact as to whether such violation was ongoing.

Having reviewed the applicable law, the Court explains its analysis of the Defendant's Motion for Summary Judgment (Doc. # 25).

## IV. *Analysis of Defendant's Motion for Summary Judgment (Doc. # 25)*

■ The Defendant asks the Court to grant it a summary judgment on the grounds that the Plaintiffs cannot prove the existence of any ongoing violation that was the subject of a proper 60–day notice. It argues that this true under either prong of the test used by the Fourth Circuit to determine whether there is an ongoing violation of the CWA. The Court will address the Defendant's argument as it relates to each of the three remaining claims.

### A. *Claim of Excessive Discharge of Phenol*

In their Amended Complaint, the Plaintiffs alleged that the Defendant had violated the phenol limits in its discharge permit (Doc. # 3, ¶ 50). The Court determined that the claim of a phenol violation was properly before the Court, because the required notice was given of one such violation. Specifically, the Plaintiffs' letter stated that there had been "an excessive discharge into the Village of Anna POTW ... of Phenol, which was [ ] reported in the July–December self-monitoring report." March 22, 1996, Letter at 2 (Doc. # 25, Exh. E).

The Defendant argues that the Plaintiff cannot prove that the phenol violation "continued on or after the date the complaint was filed." Defendant further argues that, when the suit was filed, there was no "likelihood of a recurrence in intermittent or sporadic violations." It argues that it is entitled to a summary judgment on this claim because this particular violation was "remote and isolated" and was corrected well before the Plaintiffs filed their Complaint in May, 1996. Defendant argues that no violations "of the type complained of" by the Plaintiff took place on or

after May 22, 1996. Indeed, Defendant disputes the Plaintiffs' allegation that it violated its phenol limits at all in 1992.

In support of its argument, the Defendant points the Court to the Affidavit of David M. Kreglow, a Senior Manager for the Defendant (Doc. # 25, Exh. 1). Kreglow was formerly in charge of overseeing compliance with the terms of the Defendant's permit to discharge wastewater into the Anna POTW (*id.* at ¶¶ 1–2). Kreglow testifies that a violation may have occurred in March, 1993 (*id.,* ¶ 21). However, since the test of March 5, 1993, he testifies that none of the fifty tests performed by Honda indicate that Honda has exceeded the daily or monthly discharge limits for phenol (*id.,* ¶ 24). The last test noted in his affidavit occurred on September 18, 1996. Accordingly, it would appear that no violations occurred during the period encompassed by the Plaintiffs' notice letter in March, 1996, or the filing of the Plaintiffs' Complaint in May, 1996.

The Plaintiffs do not dispute this evidence, but offer other evidence. They direct the Court's attention to an Ohio EPA report that indicates that there were phenol violations in November and December, 1992, in addition to the March, 1993, violation. *See* Ohio EPA Report for January to June, 1993 (Doc. # 25, Exh. I). In addition, the Plaintiffs point out that there are certain "spikes" noted in the Defendant's records regarding the Sidney Permit. Although these "spikes" do not exceed any standard, Plaintiffs claim that this shows "that, while affluent concentrations of phenol have generally declined, the amounts discharged remain significant." Memorandum in Opposition at 11.

Plaintiffs point to other evidence as well. They argue that a genuine issue is raised because the Sidney Permit sets stricter requirements on phenol discharge, making it likely that Defendant will breach the limits. The Plaintiffs also charge that the Defendant has violated the phenol limits contained within the Sidney Permit. *See* Plaintiffs' Motion to Supplement Their Memorandum in Opposition to Defendant Honda of America's Motion for Summary Judgment at 1–2 (Doc. # 34) (inserting into the record a copy of a recent report documenting Honda's compliance with the Sidney Permit).

As stated in its Entry of March 30, 1998, the Court concluded that the evidence does not raise a genuine issue of material fact as to whether there was an ongoing violation of the CWA when the Plaintiffs filed this suit on May 23, 1996. The first part of the Fourth Circuit's test is not met because there is no evidence at all indicating that the Defendant violated the phenol limits contained in either the 1990 Permit or the 1995 Permit, after March 5, 1993. Rather, the only evidence on this point suggests that, to the contrary, there were no violations after this date.

Neither is the second part of the Fourth Circuit's test met. This second, alternative part of the test requires a plaintiff to prove that there was a continuing likelihood of a recurrence in intermittent or sporadic violations. The Fourth Circuit explained that "[i]ntermittent or sporadic violations do not cease to be ongoing until the date when there is no real likelihood of repetition." *Gwaltney,* 844 F.2d at 172. At the time that the suit was filed, on May 23, 1996, there had been no documented violation of the phenol limits in the 1990 or 1995 Permits in over three years.

Judging from the time the suit was filed, there is absolutely no evidence in the record indicating any sort of trend or, indeed, likelihood, that another violation would occur. *See Allen County Citizens,* 762 F.Supp. at 741 (no genuine issue of material fact raised as to whether a violation is ongoing when no evidence that violations are not purely historic). *See also Russian River Watershed Protection Committee v. City of Santa Rosa,* 142 F.3d 1136, 1143 (9th Cir.1998) (affirming District Court's conclusion that pH violations of defendant's discharge permit were not ongoing or likely to recur when there were no

violations for two years preceding the commencement of the lawsuit).

The Plaintiffs' arguments to the contrary are not persuasive. The fact that the Defendant's wastewater to the Anna POTW contained "spikes" on two occasions does not serve to raise a genuine issue as to the possibility of another violation. The Defendant's permit expressly permitted such spikes in its phenol emission: it permitted phenol discharges up to a specified amount. If these spikes were expressly permitted by the license (i.e., their existence was not a violation), then their presence cannot serve as a harbinger of "intermittent or sporadic" violations. The Defendant was allowed to discharge up to a certain limit by the permit. That it came close to the limit on two occasions in the past does not, without more, signify anything about the possibility of actual violations of that limit.

The Plaintiffs also suggest that "[c]hanges in monitoring procedures may further increase the likelihood of future phenol violations." Memorandum in Opposition at 11. They explain that the Defendant has always conducted its emission tests on Wednesdays and Thursdays, which days always demonstrate low numbers. When Defendant tests on Fridays, however, the readings are much higher. Plaintiffs explain that Defendant's new permit requires it to test on four consecutive days, thus preventing it from just picking the best one or two days of the week. Under this new procedure, Plaintiffs speculate that the Defendant will likely show the high numbers that it usually hides by testing in mid-week. Because Rule 56 requires the production of some evidence, as opposed to mere speculation, the Court cannot conclude that the Plaintiffs' theory suffices to carry their burden.

Even assuming that the Plaintiffs can demonstrate that the Sidney Permit has been or is likely to be violated, the Court concluded that any alleged violations of this new permit cannot be relied upon to prove an ongoing violation of the 1990 or 1995 Permits. Specifically, the Court concluded that such evidence relating to the Sidney Permit is simply not relevant to the question of whether, at the time the Plaintiffs' Complaint was filed, there were ongoing violations of the Defendant's permit to discharge into the Anna POTW which were properly noticed to the Defendant. Any violations of the Sidney Permit are categorically different from alleged violations of the 1990 or 1995 Permits to discharge into the Anna POTW. The difference is that the discharge is now going to a completely different facility, under a different permit, with different standards.[3]

The Plaintiffs argue that this is not a principled distinction, and rely upon a recent Seventh Circuit decision for support. *Atlantic States Legal Foundation v. Stroh Die Casting Co.*, 116 F.3d 814, 815 (7th Cir.), *cert. denied*, 522 U.S. 981, 118 S.Ct. 442, 139 L.Ed.2d 379 (1997). In that case, the District Court granted summary judgment to a polluter on several grounds including, *inter alia*, that the violation noticed by the plaintiff was not ongoing at the time the suit was filed. The Court of Appeals vacated this part of the summary judgment and remanded the case, holding that the District Court misinterpreted the requirements of the Supreme Court's holding in *Gwaltney*.

Specifically, the Seventh Circuit determined that a genuine issue of material fact existed as to whether the violation that was properly noticed before suit was filed, was "ongoing" at the time the complaint was filed. The plaintiff's notice letter addressed the polluter's discharge of wastewater into the sewers of Milwaukee at "outfall 3." After receiving the notice letter, the polluter obtained a permit for this discharge, and then re-routed its discharge to another point in the sewer system ("out-

---

**3.** With respect to the limits on phenol discharge permitted by the various permits at issue, the limits are more stringent under the Sidney Permit than they were under the Permits which regulated discharge to the Anna POTW.

fall 4"), after it had built a new treatment facility. Because the plaintiff's notice letter only addressed outfall 3, the polluter argued that the plaintiff provided insufficient notice of a violation of outfall 4 and, as an opposite side of the same coin, that the violation of outfall 3 was not "ongoing."

The Seventh Circuit's resolution of this issue of the appeal rested upon its interpretation of what constitutes a violation of a permit, which, in turn, rests upon its interpretation of the notice requirement. Unlike some courts, it stated, it was adopting a liberal approach to the what contents are required in the 60–day notice. The court concluded, therefore, that the offense perpetrated by the polluter in discharging to outfall 3 was, in effect, the same sort of violation that was later occurring vis-a-vis outfall 4. Accordingly, the notice given regarding outfall 3 was equally applicable to outfall 4. Further, because the polluter was violating its permit regarding outfall 4 at the time the suit was filed (which was equivalent for all practical purposes with the warning about outfall 3), that meant that the violation originally noticed by the plaintiff (at outfall 3) was an "ongoing" violation (at outfall 4). Judge Manion dissented on the ground that the majority read the notice requirements too broadly; he would have held that the polluter did not have proper notice of a violation at outfall 4. *Stroh Die Casting*, 116 F.3d at 822 (Manion, J., dissenting).

The Court cannot follow the approach taken by the majority in that case. As stated above, the Court has previously indicated in this litigation that it has adopted a strict approach to assessing the propriety of notice under the CWA. In light of the decision of the Sixth Circuit in *Atlantic States Legal Foundation v. United Musical Instruments*, 61 F.3d 473 (6th Cir. 1995), this Court earlier concluded that it was bound to read the notice requirement strictly, both in terms of the requirement that notice be given and with respect to the contents of the notice. The Court concluded that a notice is defective if it does not specify exactly which parameter of a particular permit is being violated, and how it is being violated. *E.g.*, Decision and Entry of October 21, 1996, at 13–18 (Doc. # 13).

Given this Court's holding in these earlier decisions that a plaintiff's 60–day notice letter must contain specific allegations of a violation of a specific parameter, it is apparent that, if a polluter ceases to discharge under a certain permit at a particular location and pollutes elsewhere, a plaintiff seeking to challenge this new method of pollution must provide a new 60–day notice listing the specific violation. If the polluter ceases to commit violations under the old permit at the old site, then there is no "ongoing" violation of which to complain of the pollution being done elsewhere. While this analysis may seem overly technical, the Court has concluded that this analysis is mandated by the Sixth Circuit's decision in *United Musical Instruments*. Moreover, the Court notes that this line of analysis was persuasive enough to one member of the panel hearing *Stroh Die Casting* that he felt compelled to write a dissenting opinion.

For the reasons set forth in the preceding paragraphs, the Court concluded that the evidence did not raise a genuine issue of material fact as to whether, at the time the Plaintiffs commenced this action, there was an ongoing violation of the Defendant's discharge permits relating to the Anna POTW. Accordingly, the Court determined that a summary judgment should be entered in favor of the Defendant on this claim.

### B. Claim of Excessive Discharge of Total Toxic Organics (TTOs)

The Plaintiffs also claimed, in their Amended Complaint, that the Defendant is liable for having violated the terms of its discharge permit relating to the discharge of total toxic organics (TTOs). In support of its argument that there was no ongoing violation of the TTO aspects of the discharge permit at the time of the filing of

the Complaint, the Defendant relies upon the affidavit testimony of Kreglow. Based upon all the Defendant's testing, Kreglow testifies that was no violation of TTO levels after October 2, 1992 (Kreglow Aff., ¶ 15). In reaching this conclusion, Kreglow includes testing up until August 21, 1996, after the time of the mailing of the notice letter and the filing of the Complaint (*id.*).

The Plaintiffs, in their Memorandum in Opposition, concede that they have no evidence that would indicate an ongoing violation of the Defendant's discharge limits on TTOs. *See* Memorandum in Opposition at 12. Although they suggested in their Memorandum in Opposition that they might subsequently seek to supplement the record with additional evidence pertaining to such substances, no such supplementation has occurred.

Based upon the evidence that is in the record, the Court concluded that no genuine issue of material fact was raised as to whether there was an ongoing violation of the Defendant's permits to discharge TTO's into the Anna POTW. Rather, the evidence indicates that the Defendant's violation of the TTO limits contained in its 1990 Permit was an isolated occurrence, and was not an "ongoing" violation at the time the Plaintiffs commenced this action with the filing of their Complaint in May, 1996. Because no genuine issue is raised as to whether this violation was ongoing, the Court must conclude that the Plaintiffs would be unable to prove at trial an essential element of their cause of action under the CWA. Accordingly, a summary judgment is properly entered in favor of the Defendant on the claim for violation of TTO limits in the discharge to the Anna POTW.

### C. *Claim of Late Reporting*

The Plaintiffs' third claim—for which proper notice was provided—alleges that the Defendant is liable under the CWA for having violated the terms of its discharge permit by submitting late reports. Again, because the purpose of the citizen-suit pro-

vision of the CWA is to allow citizens to sue to abate ongoing violations of the CWA, the Court must determine whether the evidence raises a genuine issue of material fact as to whether there was such an ongoing violation at the time this suit was filed. The Defendant, of course, argues that there was no such ongoing violation. As stated in this Court's Entry in March, 1998, the Court has agreed with that position. The Court's reasoning appears below.

As stated in its earlier opinion, of October 21, 1996, the Court concluded that the claim of late reporting was properly before the Court because the Plaintiffs had provided adequate notice to the Defendant about this violation of the Permits. Specifically, the Plaintiffs' notice letter referenced a specific date upon which a violation was alleged to have occurred: an April 12, 1993, report that should have been submitted no later than December 15, 1992. The Plaintiffs' notice letter referenced "part III, 3" of the Defendant's 1990 and 1995 Permits. This portion of these Permits states that "Monitoring data required by this permit shall be reported on the Ohio EPA report form (4519) on a semi-annual basis, unless otherwise specified." (Doc. # 25, Exhs. A & B). Each Permit sets the 15th day of June and December as the date upon which these reports must be received. This section of the 1990 and 1995 Permits also requires several other procedures, but no violations of these other requirements were alluded to in the Plaintiffs' notice letter in March, 1996.

The Defendant's evidence on this issue comes from the Kreglow affidavit. He states that, since May 17, 1994, all reports prepared by Honda have been submitted in accordance with Ohio EPA requirements. Kreglow Aff. at ¶ 27. Before that time, he states that Honda did not always submit its internal reports to the Ohio EPA, but he states that it began to do so once the Ohio EPA began to ask for them. *Id.* at ¶ 25. In sum, this evidence supports

a finding that, for two years prior to the filing of this lawsuit, the Defendant did not violate the terms of its discharge permits by submitting a late report to the Ohio EPA.

The Plaintiffs, in support of their argument that the late-reporting violation was ongoing, reference two portions of the Code of Federal Regulations. They begin by referencing a regulation addressing pretreatment standards for metal molding and casting. 40 C.F.R. § 464.01. According to the Plaintiffs' evidence, the Defendant is subject to this regulation, which limits discharges from Defendant's wastewater streams (Doc. # 30, Exh. 1–E, fourth page). The Plaintiffs then direct the Court to another regulation, 40 C.F.R. § 403.12, which imposes upon the Defendant the obligation of providing reports to the Sidney POTW, indicating whether it is in compliance with the pretreatment standards. The Plaintiffs allege that the Defendant did not submit these reports. No evidence in support of this last claim has appeared.

Assuming that the Plaintiffs are correct that the Defendant has failed to submit these reports on a timely basis,[4] the Court concludes that this evidence does not raise a genuine issue as to whether the violations complained of in the Plaintiffs' 60–day letter were ongoing. As stated above in connection with the Court's analysis of the phenol claim, evidence relating to violations of the Sidney Permit is not relevant to the question of whether the Plaintiffs complained of ongoing violations at the Anna POTW. Summary judgment is properly entered in favor of the Defendant on this third claim.

For the reasons set forth above, the Court concluded that the evidence of record failed to raise a genuine issue of material fact as to whether any of the three claims for which the Plaintiffs provided

notice was ongoing at the time this suit commenced in May, 1996. Because of this holding, the Court did not need to examine the Defendant's alternative argument that the case is moot. *See* Defendant's Motion for Summary Judgment at 15–16. Nor, for that matter, did the Court need to examine whether the Plaintiffs have standing under Article III of the Constitution to challenge the Defendant's actions vis-a-vis the Sidney facility. *See* Defendant's Reply Memorandum at 6 n. 4 (Doc. # 32).

Because the evidence of record did not raise any genuine issues of material fact, the Court determined that a summary judgment was properly entered in favor of the Defendant. Accordingly, the Court now SUSTAINS the Defendant's Motion for Summary Judgment (Doc. # 25). Judgment will be entered in favor of the Defendant and against the Plaintiffs.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

4. As stated, the Plaintiff did not cite the Court to any evidence on this point. The Defendant, however, has done so, and it supports the proposition that the reports were timely filed under revised time limits. Reply at 9 n. 7 (referencing February 11, 1997, report and time limits contained within the Sidney Permit).