**SIERRA CLUB OHIO CHAPTER,**
et al., Plaintiffs,

v.

**CITY OF COLUMBUS,**
et al., Defendants.

Nos. 02–CV–722, 02–CV–924.

United States District Court,
S.D. Ohio,
Eastern Division.

Aug. 29, 2003.

Albert J. Slap, Glendale, OH, Tom Henry Nagel, Columbus, OH, for Plaintiffs.

Christopher Craig Woods, Squire, Sanders & Dempsey, Columbus, OH, for Defendants.

## OPINION AND ORDER

MARBLEY, District Judge.

### I. INTRODUCTION

These matters are before the Court on the Defendants' Motions to Dismiss the above-captioned cases. The Plaintiffs in these matters are the Sierra Club Ohio Chapter and Patricia Marida, Nancy Heath, Tom Porch, and George Anderson, all of whom bring claims in their representative capacities as members of the Sierra Club Central Ohio Group. In both of the above-captioned cases, the Plaintiffs bring suit against the Defendants, the City of Columbus, Michael Coleman, in his official capacity as Mayor of Columbus, the Columbus City Council and its members, including Matthew D. Habash, Michael C. Mentel, Kevin L. Boyce, Jennette B. Bradley, Maryellen O'Shaughnessy, Richard W. Sensenbrenner, and Charleta B. Tavares, all of whom are named in their official capacities, John Doutt, in his official capacity as the Director of the Department of Public Utilities, and Donald Linn, in his official capacity as the Administrator of the Columbus Department of Public Utilities, Division of Sewerage and Drainage. The Plaintiffs have filed two Complaints against the Defendants with this Court alleging that the Defendants have violated, and continue to violate, the federal Clean Water Act, 33 U.S.C. §§ 1311 and 1342. The Defendants seek to dismiss the Plaintiffs' Complaints on the ground that the Plaintiffs failed to satisfy the mandatory pre-suit notice requirements of section 505 of the Clean Water Act, 33 U.S.C. § 1365.

Based on the following analysis, the Court **GRANTS** the Defendants' Motions to Dismiss.

### II. BACKGROUND

#### A. Factual Background[1]

The City of Columbus ("Columbus" or "the City") owns and operates an extensive wastewater collection and treatment system which collects wastewater generated in Columbus, as well as in many surrounding communities. The system consists of more than 4000 miles of sewers, serves more than one million people, and covers approximately 414 square miles of territory.

---

1. The following facts are set forth in the Defendants' Motion to Dismiss, filed in Case No. 02–CV–722, and are based, in part, on the affidavit of Defendant Donald Linn, the Administrator for the Division of Sewerage and Drainage within the Department of Public Utilities with the City of Columbus. As the Plaintiffs have not disputed the accuracy of this factual background, the Court presumes this background to be accurate and true.

The wastewater generated in this territory is conveyed to one of two wastewater treatment plants owned and operated by the City. These two plants, the Jackson Pike Wastewater Treatment Plant ("Jackson Pick WWTP") and the Southerly Wastewater Treatment Plant ("Southerly WWTP"), treated more than fifty-seven billion gallons of water in 2001. The City is obligated to operate the plants in accordance with the terms and conditions set forth in the National Pollutant Discharge Elimination System ("NPDES") permits issued by the Ohio Environmental Protection Agency ("Ohio EPA"). Jackson Pike WWTP's most recent NPDES Permit, No. 4PF00000*JD, and Southerly WWTP's most recent NPDES Permit, No. 4PF00000*KD, were both issued by the Ohio EPA effective November 1, 1993.

Although the two plants treat the majority of the wastewater conveyed to them, there are times, usually during significant rain events, when the plants reach their full capacity and cannot treat all of the wastewater being conveyed. During these times, the City uses a bypass located at the Southerly WWTP to protect the integrity of the plant. This bypass is an authorized outfall in Southerly's NPDES permit.

Two kinds of sewers convey wastewater to treatment plants: sanitary sewers and combined sewers. Sanitary sewers are dedicated to the transport of wastewater and are not designed to handle significant amounts of storm water. Combined sewers are designed to handle both wastewater and all storm water runoff in a particular area. Because combined sewers are designed to handle both wastewater and storm water, they are connected to the wastewater treatment plants. In addition, the combined sewers are designed with direct overflow points, at which they discharge directly into rivers. Normally, the wastewater in the combined sewers is conveyed to the treatment plant. During significant rain or storm events, however, the sewers fill with storm water, and overflow into the rivers. The points at which the sewers discharge into the rivers are referred to as combined sewer overflows ("CSOs").

In addition to wastewater sewers, including combined sewers, Columbus also has a separate system of storm water sewers (sometimes referred to as the "MS4 system"). The storm water sewers are designed to capture and convey storm water directly into Columbus' waterways. The City has a separate NPDES Permit, No. 4PI06267, issued by the Ohio EPA effective July 1, 2000, that governs the City's storm water sewer system (sometimes referred to as the "MS4 permit").

Although sanitary sewers are designed for conveying wastewater only, most sanitary sewers can be influenced by storm water. On rainy days, or when snow melts in large quantities, storm water enters the City's sanitary sewer system through various means, including improperly connected roof drains, foundation drains, and sump pumps, as well as through leaky public and private sewers. In some instances, the additional rush of rainwater is more than the sanitary sewer system can carry. Accordingly, when excess rainwater overwhelms the system, a mixture of rainwater and diluted sanitary wastewater will sometimes be released through sewer "relief points" or "overflows" to a storm sewer or nearby river. These releases of rainwater and wastewater into a storm sewer or river are referred to as "sanitary sewer overflows" or "SSOs."

## B. Procedural History

### 1. The First Notice Letter and Complaint by the State

As discussed in more detail below, citizens may file lawsuits to enforce the provisions of the federal Clean Water Act. No

citizen lawsuit can be filed, however, prior to sixty days after the plaintiff has given notice of the alleged violation to the alleged violator. 33 U.S.C. § 1365(b)(1)(A).

On March 28, 2002, Patricia Marida, in her capacity as the Chairperson of the Sierra Club Central Ohio Group,[2] sent a notice letter to Michael Coleman, the Mayor of Columbus, and Donald Linn, Administrator of the Columbus Department of Public Utilities, Division of Sewerage and Drainage, indicating the Sierra Club's [3] intent to bring suit against Coleman and Linn in this Court, to seek injunctive relief and appropriate civil remedies for the City's alleged violations of the federal Clean Water Act. The letter claimed, *inter alia*, that the City was violating the Clean Water Act by discharging raw sewage through hundreds of unapproved SSOs.

On May 24, 2002, just before the sixty-day notice period had passed, the State of Ohio filed a lawsuit against the City of Columbus in the Franklin County Court of Common Pleas. Under the Clean Water Act, citizen lawsuits may not be filed if the State has already commenced and is diligently prosecuting a civil or criminal action to require compliance with the statute. 33 U.S.C. § 1365(b)(1)(B). The suit by the State was filed on behalf of the Ohio EPA and alleged that the City had been violating Ohio Revised Code Chapter 6111, the State law equivalent of the Clean Water Act, by having illegal discharge points in the form of SSOs and by having illegal bypasses at the Southerly WWTP. On the same day that the Complaint was filed, the City and the State filed a consent decree. On August 1, 2002, a Consent Order was entered by the Franklin County Court of Common Pleas in that matter. The Consent Order required the City to engage in an aggressive program to eliminate and minimize SSOs and bypasses at the Southerly WWTP.

### 2. May 21, 2002 and May 23, 2002 Notice Letters

On May 21, 2002, Ms. Marida wrote a second notice letter in her official capacity as the Chairperson of the Central Ohio Sierra Club.[4] The May 21, 2002 letter was hand-delivered to Mayor Coleman and Mr. Linn on May 22, 2002. The letter described the makeup and mission of the Sierra Club and the Sierra Club Central Ohio Group, and stated generally that the recreational, environmental, aesthetic and other interests of the Sierra Club in the use and enjoyment of various rivers in streams in and around the City of Columbus had been impaired by the City's alleged violations of its NPDES permits, Nos. 4PF00000*JD and 4PF000001*KD, which apply to the Jackson Pike WWTP and Southerly WWTP, respectively. The letter also stated that George Anderson, Nancy Heath, and Tom Porch, individual members of the Sierra Club, joined in the notice of intent to sue, and described in a general manner how those individual members were affected by the City's alleged violations of its NPDES permits. The letter went on to state:

> The City of Columbus has been and is in violation of the above-referenced

---

**2.** Although the letter was written on letterhead with the heading, "Sierra Club Central Ohio Group," Ms. Marida signed the letter as chairperson of "Central Ohio Sierra Club."

**3.** Although the letter was written on letterhead stating, "Sierra Club Central Ohio Group," and Ms. Marida signed as the chairperson of the "Central Ohio Sierra Club," throughout the text of the letter, she referred to the "Sierra Club," which she described as a national organization with its principal place of business in San Francisco, California, or simply, "the Club."

**4.** The May 21, 2002 letter was written on letterhead stating, "Sierra Club." The body of the letter referred to the "Sierra Club," the "Sierra Club Central Ohio Group," and simply "the Club."

NPDES permits for failing to comply with the Schedule of Compliance for Combined Sewer Overflows in these permits, Part I, Section C, and Part II, Other Requirements, Paragraphs E, F, T and Part III, paras. 3, 11, 14, 15. The letter concluded by indicating that the Sierra Club and the individual members named in the letter intended to commence legal action in this Court, after the sixty-day notice period, against the City of Columbus for its alleged violations of the Clean Water Act.

On May 23, 2002, Ms. Marida wrote a third notice letter in her official capacity as the Chairperson of the Central Ohio Sierra Club.[5] The May 23, 2002 letter was served via certified mail on May 30, 2002. Like the May 21, 2002 letter, the May 23, 2002 letter described the general makeup and mission of the Sierra Club and the Sierra Club Central Ohio Group. It listed Mr. Anderson, Ms. Heath, Mr. Porch, and Ms. Marida as individual members of the Sierra Club who joined in the notice of intent to sue. The letter also stated, in a manner similar to the May 21, 2002 letter, that the recreational, environmental, aesthetic, and other interests of the Sierra Club and these individual members in various rivers and streams in and around the City of Columbus are and had been seriously impaired by the City's alleged violation of Ohio EPA Permit No. 4PI00000*AD, the "MS4" permit, which applies to the City's storm water sewer system.

The May 23, 2002 letter included the following paragraph regarding the City's alleged violation of the MS4 permit:

> The City of Columbus has been and is in violation of the above-referenced NPDES permit for maintaining hundreds of illegal cross-connections from the City's sanitary sewer system into the MS4 and by failing to comply with Part I, para. C, and Part II. C Annual Report, Part III, paras. A.1.a., A.1.d., Part V.A.1, Part VI.A and G of Ohio EPA Permit No. 4PI00000*AD.

The letter then concluded by stating that the Sierra Club and the individual members named in the letter intended to commence legal action in this Court, after the sixty-day notice period, against the City of Columbus for its alleged violations of the Clean Water Act.

### 3. Cases 02–CV–722 and 02–CV–924

On July 24, 2002, the Plaintiffs, the Sierra Club Ohio Chapter, Patricia Marida, Nancy Heath, Tom Porch, and George Anderson, in their representative capacities as members of the Sierra Club Central Ohio Group, filed their Complaint in case number 02–CV–722 against the Defendants, the City of Columbus, Michael Coleman, in his official capacity as Mayor of Columbus, the Columbus City Council and its members, Matthew Habash, Michael Mentel, Kevin Boyce, Jennette Bradley, Maryellen O'Shaughnessy, Richard Sensenbrenner, and Charleta Tavares, in their official capacities as members and officers of the City Council, John Doutt, in his official capacity as Director of the Department of Public Utilities, and Donald Linn, in his official capacity as the Administrator of the Columbus Department of Public Utilities, Division of Sewerage and Drainage. The Complaint sets forth a cause of action for violations of the federal Clean Water Act, 33 U.S.C. §§ 1311 and 1342 and the regulations promulgated thereunder, and for violations of Ohio Rev.Code section 6111, *et seq.*

On September 6, 2002, the Defendants filed a Motion to Dismiss the Plaintiffs'

---

**5.** The May 23, 2002 letter was written on letterhead with the heading, "Sierra Club." The body of the letter referred to the "Sierra Club," the "Sierra Club Central Ohio Group," and simply "the Club."

Complaint, arguing that the notice letters that were required by statute to have been served on the Defendants at least sixty days prior to the commencement of litigation were legally insufficient, thereby making the Complaint improper. The Defendants argued that the notice letters were not only substantively insufficient, but also that, with respect to the May 23, 2002 letter, which was not served until May 30, 2002, the Plaintiffs had failed to allow the full sixty-day notice period to pass prior to filing their Complaint in federal court, thereby making the claims related to that letter improper.

On September 20, 2002, the Plaintiffs filed a Memorandum Contra Defendants' Motion to Dismiss. The Memorandum Contra set forth arguments in response to the Defendants' arguments that the notice letters were substantively insufficient. With respect to the Defendants' arguments regarding the timing of the Complaint, however, the Plaintiffs apparently conceded that the sixty-day period had not lapsed with respect to the May 23, 2002 letter and, therefore, indicated that, along with their Memorandum Contra, they were simultaneously filing another complaint. On October 7, 2002, the Defendants filed a Reply Memorandum in support of their Motion to Dismiss Case No. 02–CV–722.

As indicated in their Memorandum Contra Defendants' Motion to Dismiss Case No. 02–CV–722, on September 20, 2002, the Plaintiffs filed a Complaint against the Defendants in a case that was assigned the file number 02–CV–924. The Complaint was identical to the Complaint filed in Case No. 02–CV–722 in all respects, other than the fact that it included the following paragraph:

This Complaint is being filed pursuant to objections made in the Defendants'

Motion to Dismiss in Case No. C2–02–722. One of the objections made in Defendants' Motion was that the Complaint was filed before the required 60–day delay with respect to the May 23, 2002, Sierra Club Notice Letter. More than sixty-days [sic] have now passed from the date that the May 23, 2002 Notice Letter was received by the Defendants. This Complaint is related to C2–02–722 and a Motion to Consolidate the cases will be filed by Plaintiffs, if the Court does not consolidate them on its own motion.

On October 11, 2002, the Defendants filed a Motion to dismiss the Complaint filed in 02–CV–924. In addition to arguing that this Complaint did not cure the timing deficiencies of the first Complaint, the Defendants adopted the arguments set forth in their Motion to Dismiss case 02–CV–722 regarding the substantive deficiencies of the notice letter. On October 30, 2002, the Plaintiffs filed a Memorandum Contra Defendants' Motion to Dismiss. In addition to arguing that the second Complaint cured any timing deficiencies, the Plaintiffs adopted the arguments set forth in their Memorandum Contra Defendants' Motion to Dismiss case 02–CV–722 regarding their position that the notice letter was substantively sufficient. The Defendants filed a Reply Memorandum in support of their Motion to Dismiss Case Nos. 02–CV–924 on November 14, 2002.

These matters are now before the Court on the Defendants' Motions to Dismiss the Plaintiffs' Complaints for lack of jurisdiction.

## III. STANDARD OF REVIEW [6]

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may

---

**6.** Although the Defendants argue that the Plaintiffs' claims should be dismissed for lack of jurisdiction under Rule 12(b)(1), they also

note, in passing, that the Court might also dismiss the Plaintiffs' claims under Rule 12(b)(6). Because the Defendants' Motions

move to dismiss the plaintiff's complaint for lack of subject matter jurisdiction. "[W]here subject matter jurisdiction is challenged under Rule 12(b)(1), ... the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir.1986). The burden on the plaintiff, however, is not onerous, as the plaintiff need only demonstrate "any arguable basis in law" for the complaint. *Bd. of Trustees of Painesville Township v. City of Painesville*, 200 F.3d 396, 398–99 (6th Cir.1999) (citations omitted). Indeed, in the context of a Rule 12(b)(1) motion, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## IV. ANALYSIS

The Plaintiffs file their suits against the Defendants pursuant to section 505 of the Clean Water Act, 33 U.S.C. § 1365, which states, in pertinent part: "[A]ny citizen may commence a civil action on his own behalf—(1) against any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation ...." 33 U.S.C. § 1365(a)(1). As indicated above, that statutory provision goes on to provide certain limitations for the filing of citizen lawsuits:

No action may be commenced ... under subsection (a)(1) of this section

(A) prior to sixty days after the plaintiff has given notice of the alleged violation

(i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

(B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order ....

Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.

33 U.S.C. § 1365(b).

Title 40 of the Code of Federal Regulations, Part 135, prescribes the procedures governing the giving of notice that is required by section 505(b) of the Clean Water Act, 33 U.S.C. § 1365(b), as a prerequisite to the commencing of such actions. 40 C.F.R. § 135.1(b) ("The purpose of this subpart is to prescribe procedures governing the giving of notice required by section 505(b) of the Act as a prerequisite to the commencing of such actions ...."). In particular, 40 C.F.R. § 135.3 prescribes the contents of the notice to be provided. That provision states, in pertinent part:

Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and

---

are premised on the sufficiency of the notice letters sent prior to initiating these matters, the Court views the Defendants' Motions solely as Motions to Dismiss under Rule 12(b)(1). *See Frilling v. Honda of Am. Mfg.*, No. C–3–96–181, 1996 WL 1619348 (S.D.Ohio Oct. 21, 1996) (examining the sufficiency of notice of intent to bring a citizen complaint under the Clean Water Act upon a Rule 12(b)(1) motion to dismiss).

the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a).

The Defendants argue that the Plaintiffs' Complaints must be dismissed both because (1) the May 21, 2002 and May 23, 2002 notice did not contain the contents prescribed by 40 C.F.R. § 135.3; and (2) the Plaintiffs failed to wait a full sixty days before filing their Complaint in 02–CV–722, and that timing error was not cured by the filing of the Complaint in 02–CV–924. Based on the Court's conclusion with respect to the substantive defects in the notice letters, the Court need not address the Defendants' argument regarding the allegedly improper timing of the Complaints.

■ The Supreme Court has held that compliance with the notice and sixty-day delay provisions are mandatory conditions precedent to filing a citizen lawsuit under the Clean Water Act, and that failure to adhere to these provisions requires dismissal of the citizen suit. *Hallstrom v. Tillamook County*, 493 U.S. 20, 31, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989).[7] In accordance with *Hallstrom*, the Sixth Circuit has concluded that compliance with the statute's notice requirements is a "jurisdictional prerequisite" to maintaining a citizen lawsuit. *See Bd. of Trustees of Painesville Township v. City of Painesville*, 200 F.3d 396, 400 (6th Cir.1999) (citing *Walls v. Waste Resource Corp.*, 761 F.2d 311, 316 (6th Cir.1985)); *Greene v. Reilly*, 956 F.2d 593, 594 (6th Cir.1992) ("the notice requirement is not a mere technical wrinkle of statutory drafting or formality to be waived by the federal courts") (internal quotations omitted).

■ Furthermore, both the Sixth Circuit and this Court have held that citizens providing notice to alleged violators must strictly comply with the notice requirements as set forth in the statute and the regulations promulgated thereunder. *Atl. States Legal Found. v. United Musical Instruments*, 61 F.3d 473, 478 (6th Cir. 1995); *Frilling v. Village of Anna*, 924 F.Supp. 821, 833 (S.D.Ohio 1996). In *United Musical Instruments*, the Sixth Circuit examined the notice provision of the Emergency Planning and Community Right to Know Act ("EPCRA"), which the court recognized was substantively identical to the notice provision of RCRA at issue in *Hallstrom*. The plaintiff in *United Musical Instruments* had provided notice to the defendant that it intended to hold the defendant accountable for statutory violations it had committed in calendar years 1987 through 1990, and noted that the defendant "may also be responsible for violations not yet known to [the plaintiff] of other EPCRA reporting requirements." *United Musical Instruments*, 61 F.3d at 478. In addition to alleging violations for 1987 through 1999, the plaintiff's complaint also alleged a statutory violation for the year 1991. The Sixth Circuit recognized that, under *Hallstrom*, the failure to follow the notice requirements of the EPCRA required dismissal of a citizen lawsuit brought thereunder. *Id.* The court held that the district court had lacked jurisdic-

---

**7.** Although *Hallstrom* actually involved an analysis of the notice provision in the Resource Conservation and Recovery Act ("RCRA"), the notice provision set forth therein is virtually identical to the notice provision in the Clean Water Act. Furthermore, both the Sixth Circuit and this Court have held that the Supreme Court's holding in *Hallstrom* applies to the Clean Water Act and other similarly constructed federal statutes.

*See Atl. States Legal Found. v. United Musical Instruments*, 61 F.3d 473, 478 (6th Cir.1995) (applying *Hallstrom* to a case that involved the notice provision of the Emergency Planning and Community Right–to–Know Act); *Greene v. Reilly*, 956 F.2d 593, 594 (6th Cir. 1992) (applying *Hallstrom* to a case that involved the notice requirements of the Clean Water Act); *Frilling v. Village of Anna*, 924 F.Supp. 821, 832–33 (S.D.Ohio 1996) (same).

tion over the claim for the alleged 1991 violation because the pre-suit notice of that particular violation was legally insufficient to put the defendant on notice with respect to that claim. *Id.* (stating that the "vague warning of possible other claims failed to inform [the defendant] of the year of the additional alleged violation or even the specific EPCRA reporting requirement involved").

Based on both *Hallstrom* and *United Musical Instruments,* this Court has held that citizens intending to file suit under the Clean Water Act must strictly comply with the notice requirements set forth in the statute as well as in the regulations promulgated thereunder. *Frilling,* 924 F.Supp. at 833 ("Accordingly, on the basis of the Sixth Circuit's decision in *United Musical Instruments,* this Court holds that plaintiffs bringing suit under 33 U.S.C. § 1365 must provide notice of the *specific* limitations, standards, or orders alleged to be violated.") (emphasis in original).[8] Although the holding of *Frilling* was premised on *Hallstrom* and *United Musical Instruments,* the court noted that there were also compelling policy reasons for requiring strict compliance with the notice requirements. In particular, the court found:

> [T]he policy reasons for requiring Plaintiffs to identify the specific standard(s),

limitation(s), or order(s) alleged to have been violated, is [sic] two-fold: *first,* such specific notice will allow government agencies to evaluate fully and adequately the violations alleged, and thereby to determine accurately their appropriate level of involvement in the matter; *second,* such specific notice will allow the recipient the opportunity to cure the violations before suit is brought, which may obviate the need for a costly lawsuit.

*Id.* at 834.

Although the Plaintiffs vigorously argue that this Court should apply a "notice in fact" standard to their notice letters, and should examine whether the Defendants were, in fact, put on notice of the claims intended to be brought against them, as opposed to whether the notice letters strictly complied with the requirements of 33 U.S.C. § 1365 and 40 C.F.R. § 135.3, the foregoing discussion makes clear that such a standard would be improper under the case law of the Supreme Court, the Sixth Circuit, and this Court. Significantly, while the Plaintiffs cite *Frilling* for Judge Rice's criticism of the "sweetheart deal" reached between the State and the Village defendant, they seem to ignore the holding in that same opinion that plaintiffs must strictly comply with the statutory and regulatory notice requirements.[9]

---

8. The Plaintiffs argue that reliance on *Hallstrom* for the proposition that they must strictly adhere to the notice requirements is improper because *Hallstrom* dealt with the failure to give notice, not the insufficient content of notice that was given. Although the Plaintiffs are correct that *Hallstrom* dealt with the complete failure to give notice, the Plaintiffs' argument nonetheless ignores the fact that both *United Musical Instruments* and *Frilling* interpret the Supreme Court's holding in *Hallstrom* to mean that strict compliance with the notice requirements is required with respect to content, and not just with respect to the giving of notice. This Court would not be *sui generis* in relying on *Hallstrom* for the proposition that the content of the notice must be in

strict compliance with the statutory and regulatory requirements, as the Plaintiffs' argument implies it would.

9. The Plaintiffs argue quite zealously that this Court should reject the "sweetheart deal" reached between the State and the City of Columbus by virtue of the Consent Order entered in the Franklin County Court of Common Pleas. The validity of that Consent Order and any impact it may have on the ability of the Plaintiffs to bring their suits in this Court, however, is not an issue now before the Court. Rather, the Defendants' Motions to Dismiss are based solely on the substantive sufficiency of the notice letters, and the Plain-

Moreover, the Plaintiffs fail to cite a single case from either this Court, the Sixth Circuit, or the Supreme Court indicating that a "notice in fact" standard can be properly applied to this Court's review of the sufficiency of the notice letters sent prior to bringing suit under the Clean Water Act.

Therefore, the Court proceeds to examine the content of the notice letters to determine whether they complied with the requirements of 33 U.S.C. § 1365 and 40 C.F.R. § 135.3 by specifying the particular standard(s), limitation(s), or order(s) alleged to have been violated and providing sufficient information to enable the alleged violators to identify the activity alleged to constitute a violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the persons giving notice.[10]

### A.  May 21, 2002 Notice Letter

The May 21, 2002 notice letter indicates the intent of various parties to file a citizen lawsuit for the City's violation of NPDES Permit No. 4PF000001*KD, which pertains to the Southerly WWTP, and NPDES Permit No. 4PF00000*JD, which pertains to the Jackson Pike WWTP. As indicated above, the letter contains a general description of the Sierra Club and three individual members, and how their use of various Ohio rivers and streams has been affected by the alleged violations of the Southerly WWTP and Jackson Pike WWTP NPDES permits. The letter then contains one paragraph that purports to set forth the specific manner in which the permits have been violated:

The City of Columbus has been and is in violation of the above-referenced NPDES permits for failing to comply with the Schedule of Compliance for Combined Sewer Overflows in these permits, Part I, Section C, and Part II, Other Requirements, Paragraphs E, F, T, and Part III, paras. 3, 11, 14, 15.

The Court will separately examine the sufficiency of this notice with respect to the claims based on alleged violations of each of these two permits.

### 1.  Notice of Intent for Alleged Violations of Southerly WWTP NPDES Permit

■  In their Complaint,[11] the Plaintiffs set forth seven fairly detailed paragraphs, including several paragraphs that have subparagraphs, regarding the Defendants' alleged violations of the Southerly WWTP NPDES permit. The Court finds, for the reasons discussed below, that the May 21 notice letter was insufficient to put the Defendants on notice that the allegations set forth in the Complaint might be brought against them by the Plaintiffs for their alleged violations of the Southerly WWTP NPDES permit.

First, the notice letter states that the City violated and continues to violate the Schedule of Compliance set forth in Part I.C. of the NPDES permit for the Southerly WWTP. The Schedule of Compliance set forth at Part I.C. of the permit contains three lengthy paragraphs, two of which contain six subparagraphs. The notice provides the alleged violators no indication of which of these multiple paragraphs they

---

tiffs' alleged failure to wait the full sixty-day notice period before filing their suit.

10.  The Defendants assert that the notice letters were deficient in each of these respects.

11.  Although two Complaints are now before the Court, the Court shall refer to a single

Complaint, as the only difference between the Complaint filed in Case No. 02–CV–722 and Case No. 02–CV–924 is the insertion of a single paragraph in the second Complaint indicating that the sixty-day notice period for the May 23, 2002 period had passed.

are alleged to have violated, or the manner in which they are alleged to have committed the violation. For example, paragraph one of the Schedule of Compliance states that, "[w]ithin three months of the effective date of this permit, or by February 1 1994, the permittee shall submit to the Central District Office of Ohio EPA two copies of a report on the maximum wet weather flows that can be treated by the Southerly WWTP," and sets forth the particular information that is to be included in the report. The notice letter does not inform the alleged violators whether they allegedly violated this provision by failing to provide the report in a timely manner, by failing to provide the report at all, or by failing to include the proper substance in the text of the report, or whether they violated this particular paragraph at all. It is only the Complaint, at paragraph 21, that sets forth the specific subparagraphs alleged to have been violated, and clarifies that those paragraphs were alleged to have been violated with respect to both timeliness and substance.[12] Therefore, the Plaintiffs failed to provide proper notice with respect to the allegations set forth in paragraph 21 of their Complaint.

Second, the notice letter alleges that the City violated, and continues to violate, Paragraph II.E. of the NPDES Permit for the Southerly WWTP. Paragraph II.E. of the permit states: "The Permittee is authorized to discharge from the following overflows only during wet weather periods when the flow in the sewer system exceeds the capacity of the sewer system," and then goes on to specify the two overflow points at which such discharge is allowed under the permit. The reference in the notice letter to this paragraph of the permit is insufficient to put the alleged violators on notice of the specific limitation they are alleged to have violated. That is, it is unclear from the notice whether the City is alleged to have discharged to these points other than during wet weather periods when the flow in the sewer system exceeds the capacity of the sewer system, or whether the City is alleged to have discharged at points other than those specified in the permit.

Paragraph 22 of the Complaint relates to the allegation that the City violated Paragraph II.E. of the Southerly WWTP NPDES permit and, unlike the notice letter, specifies that the Defendants allegedly violated this paragraph by discharging "raw, untreated sewage from point sources of combined sewage other than the two point sources designated in the Southerly permit." The Plaintiffs argue that, in fact, the notice letter provided sufficient information to the recipients to make them aware of this allegation because, in identifying the individuals who intended to bring claims, the notice letter stated that those individuals' use of various rivers in Ohio had been impaired by "discharges of raw sewage from CSOs and POTW by-pass discharges directly and indirectly to those water bodies." Although arguably those separate paragraphs indicate the type of violation at issue, the notice letters also fail to indicate the dates or specific locations of these allegedly improper discharges, as is required by 40 C.F.R. § 135.3. See Frilling v. Honda of Am. Mfg., Inc., No. C–3–96–181, 1996 WL 1619348, at *6 (S.D.Ohio

---

12. The Court rejects the position implicitly set forth by the Plaintiffs that the Defendants must have known the ways in which they violated their permits. This argument fails for multiple reasons. First, as indicated above, the notice letter must strictly comply with the statutory and regulatory requirements, making any actual knowledge on the part of the recipients irrelevant. Second, to state that the Defendants must have known the manner in which they violated their permits is to presume that they did, in fact, commit the violations alleged. The Court will not presume that the Defendants violated the permits in any manner before any evidence to that effect has been presented.

Oct. 21, 1996) (holding that notice alleging that particular violations occurred "continuously" or "nearly daily" was insufficient to satisfy the notice requirements because such language did not help the defendant identify any specific date or dates on which the alleged violations might have occurred). Therefore, the Court finds that the Plaintiffs failed to provide proper notice with respect to the allegation set forth in paragraph 22 of the Complaint.

Third, Paragraph 23 of the Complaint alleges that the Defendants have violated and continue to violate Part II.A. of the Southerly permit. The notice letter makes no reference, however, to Part II.A. of the permit. Although the notice letter does allege a general violation of Part II, Part II of the permit contains twenty paragraphs, some of which have multiple subparagraphs. The recipients of the notice letter could not have been put on notice that they were alleged to have violated Part II.A. in particular, especially in light of the fact that the notice letter did not specify the manner in which Part II was alleged to have been violated. Therefore, the Court finds that the Plaintiffs failed to provide proper notice with respect to the allegations set forth in paragraph 23 of the Complaint.

Fourth, the notice letter alleges that the City violated, and continues to violate, Part II.F. of the NPDES Permit for the Southerly WWTP. Part II.F. contains a general introductory statement regarding the manner in which the Permittee is to monitor system overflows at a particular station and report those overflows to the Ohio EPA. Part II.F. also states that the sewer system "shall be operated/maintained in such a manner as necessary to minimize impacts to the receiving stream resulting from combined sewer overflows," and lists six types of technology that shall be used to minimize such impacts. The notice letter provides the recipient no indication of the manner in which Part II.F. was allegedly violated. The recipient cannot determine whether the City is alleged to have failed to monitor system overflows, failed to report overflows, failed to maintain the system in a manner necessary to minimize impacts resulting from combined sewer overflows, failed to use any of the technology required to be used to minimize impact, or all of the above. Therefore, the Plaintiffs failed to provide proper notice of the allegations set forth in paragraph 24 of the Complaint, which allege seven distinct violations of Part II.F. of the Southerly WWTP NPDES permit.

Fifth, the notice letter alleges that the City violated, and continues to violate, Part II.T. of the NPDES Permit for the Southerly WWTP. It does not specify, however, which of the ten subparagraphs of Part II.T. is or are alleged to have been violated. Indeed, simply from reading the notice, the recipients are left to guess the particular violation being alleged.[13] Only the Complaint, at paragraph 25, specifies that the Defendants are alleged to have violated only Parts II.T.1. and II.T.2. Because the notice letter failed to provide sufficient information to the recipients for them to determine that these were the particular limitations or standards alleged to have been violated, the Court finds that the Plaintiffs failed to provide proper notice of the allegations set forth in paragraph 25 of the Complaint.

Sixth, the notice letter alleges that the City violated, and continues to violate, Part III.3. of the NPDES Permit for the Southerly WWTP. It does not specify, however,

13. As stated above, the Court will not presume that the recipients would have known which paragraph they were violating because they would have known what they were and were not doing. To presume that the Defendants had such knowledge would be to presume that the Defendants, in fact, violated the NPDES permit, which the Court will not do.

which of the three subparagraphs of Part III.3. is or are alleged to have been violated. Rather, the recipients of the notice letter must scour their records and attempt to determine the particular violation being alleged. Only the Complaint, at paragraph 26, clarifies that the Defendants are alleged to have violated only Paragraph III.A. Because the notice letter failed to provide sufficient information for the recipients to determine that this was the particular standard or limitation alleged to have been violated, the Court finds that the Plaintiffs failed to provide proper notice of the allegations set forth in paragraph 26 of the Complaint.

Finally, the notice letter states that the City violated, and continues to violate, Part III.11. of the NPDES Permit for the Southerly WWTP, which relates to unauthorized discharges. The notice letter does not specify, however, which of the five subparagraphs is or are alleged to have been violated. The notice letter does not provide the recipients sufficient information to determine whether they are alleged to have bypassed or diverted wastewater from the treatment works even when doing so was not unavoidable, whether they are alleged to have bypassed or diverted wastewater from the treatment works even though there was a feasible alternative to the bypass, whether they are alleged to have failed to submit prior notice when they knew in advance of the need for a bypass, whether they are alleged to have submitted prior notice but not at least ten days before the date of the bypass, or, finally, whether they are alleged to have failed to submit notice of an unanticipated bypass. Rather, the language of the notice letter lacks sufficient information regarding this alleged violation, and leaves the recipients without the ability to determine the activity that is alleged to constitute the violation. Furthermore, the notice letter fails to inform the Defendants of the date or dates and locations of these alleged violations. Accordingly, the Plaintiffs failed to provide the Defendants sufficient notice of the allegations set forth in paragraph 27 of the Complaint, which alleges violations of Part III.11 of the permit.[14]

## 2. Notice of Intent for Alleged Violations of Jackson Pike WWTP NPDES Permit

In their Complaint, the Plaintiffs set forth eight fairly detailed paragraphs, including several paragraphs that have subparagraphs, regarding the Defendants' alleged violation of the Jackson Pike WWTP NPDES permit. For the reasons discussed below, and for reasons similar to those discussed with respect to the notice letter as it pertained to the Southerly WWTP NPDES permit, the Court finds that the May 21 notice letter was insufficient to put the Defendants on notice that the allegations set forth in the Complaint might be brought against them by the Plaintiffs for their alleged violations of the Jackson Pike WWTP NPDES permit.

First, the notice letter states that the City violated and continues to violate the Schedule of Compliance set forth in Part I.C. of the NPDES permit for the Jackson Pike WWTP. The Schedule of Compliance set forth at Part I.C. of the permit contains three lengthy paragraphs, two of which contain six subparagraphs. The notice provides the alleged violators no indication of which of these multiple paragraphs they are alleged to have violated,

---

14. The Court recognizes that the Complaint actually refers to Part III.10 of the permit. The Court agrees with the Plaintiffs, however, that, as paragraph 27 of the Complaint specifically alleges violations of the part of the permit dealing with "unauthorized discharges," the reference to Part III.10 was simply a typographical error, and was clearly intended to refer to Part III.11.

or activity alleged to constitute the violation. It is only the Complaint that sets forth, at paragraph 28, the specific paragraphs of Part I.C. alleged to have been violated, and clarifies that those paragraphs were alleged to have been violated with respect to both timeliness and substance. Therefore, the Plaintiffs failed to provide proper notice with respect to paragraph 28, and the subparagraphs set forth thereunder, of their Complaint.

Second, the notice letter alleges that the City violated, and continues to violate, Part II.E. of the NPDES Permit for the Jackson Pike WWTP. Part II.E. of the permit states: "The permittee is authorized to discharge from the following overflows only during wet weather periods when the flow in the sewer system exceeds the capacity of the sewer system," and then goes on to specify the overflow points at which such discharge is allowed under the permit. Part II.E. then contains a paragraph, similar to that set forth in Part II.F. of the Southerly WWTP NPDES permit, stating that the sewer system "shall be operated/maintained in such a manner as necessary to minimize impacts to the receiving stream resulting from combined sewer overflows," and lists six types of technology that shall be used to minimize such impacts.

The reference in the notice letter to Part II.E. of the permit is insufficient to put the alleged violators on notice of the specific standard or limitation they are alleged to have violated. That is, it is unclear from the notice whether the City is alleged to have discharged to the overflow points other than during wet weather periods when the flow in the sewer system exceeds the capacity of the sewer system, whether the City is alleged to have discharged at points other than those specified in the permit, or whether the City is alleged to have failed to utilize the six types of technology re-

quired to minimize the impact from combined sewer overflows.

Paragraph 29 of the Complaint relates to the allegation that the City violated Paragraph II.E. of the Jackson Pike WWTP NPDES permit and, unlike the notice letter, specifies that the Defendants allegedly violated this paragraph by discharging "raw, untreated sewage from point sources of combined sewage other than the point sources designated in the Jackson Pike permit." The Plaintiffs argue that, in fact, the notice letter provided sufficient information to the recipients to make them aware of this allegation because, in identifying the individuals who intended to bring claims, the notice letter stated that those individuals' use of various rivers in Ohio had been impaired by "discharges of raw sewage from CSOs and POTW by-pass discharges directly and indirectly to those water bodies." Although those statements arguably indicate the activity alleged to constitute the violation, the notice letter also failed to indicate the specific date or dates and location or locations of these allegedly improper discharges, as required by 40 C.F.R. § 135.3. *See Frilling v. Honda of Am. Mfg., Inc.*, No. C–3–96–181, 1996 WL 1619348, at *6 (S.D.Ohio Oct. 21, 1996) (holding that notice alleging that particular violations occurred "continuously" or "nearly daily" was insufficient to satisfy the notice requirements because such language did not help the defendant identify any specific date or dates on which the alleged violations might have occurred). Therefore, the Court finds that the Plaintiffs failed to provide proper notice with respect to the allegation set forth in paragraph 29 of the Complaint.

Paragraph 31 of the Complaint also relates to the allegation that the City violated Part II.E. of the Jackson Pike WWTP NPDES permit.[15] Unlike the notice let-

15. Paragraph 31 of the Complaint actually refers to Part II.F. of the Jackson Pike

ter, that paragraph of the Complaint specifies that the City allegedly violated Part II.E. of the permit by failing to operate the sewer system in such a manner as to minimize impacts to the receiving stream resulting from combined sewer overflows, as well as by failing to utilize any of the six technologies required to be used to minimize such impact. Since the recipients of the notice letter could not have determined the activity or omission that was alleged to have constituted a violation of Part II.E. of the permit, the Plaintiffs failed to provide proper notice with respect to the allegations set forth in paragraph 31 of the Complaint.

Third, Paragraph 30 of the Complaint alleges that the Defendants have violated and continue to violate Part II.A. of the Jackson Pike permit. The notice letter makes no reference to Part II.A. of the permit. Although the notice letter does allege a general violation of Part II, Part II of the permit contains twenty paragraphs, some of which have multiple subparagraphs. The general allegation of a violation of Part II could not have put recipients of the letter on notice that they were alleged to have violated Part II.A. specifically, particularly in light of the fact that the notice letter did not specify the manner in which Part II was alleged to have been violated. Therefore, the Court finds that the Plaintiffs failed to provide proper notice with respect to the allegations set forth in paragraph 30 of the Complaint.

Fourth, the notice letter alleges that the City violated, and continues to violate, Part II.T. of the NPDES Permit for the Jackson Pike WWTP. It does not specify, however, which of the ten subparagraphs of Part II.T. is or are alleged to have been

violated. Rather, to determine the activity alleged to constitute a violation of Part II.T, the recipients would have to review their records and attempt to determine for themselves which activity or omission might have violated that part of the permit. The Complaint, however, in paragraph 32, specifies that the Defendants are alleged to have violated only Parts II.T.1. and II.T.2. Because the notice letter failed to provide sufficient information to the recipients for them to determine that these were the violations being alleged, the Court finds that the Plaintiffs failed to provide proper notice of the allegations set forth in paragraph 32 of the Complaint.

Fifth, the notice letter alleges that the City violated, and continues to violate, Part III.3. of the NPDES Permit for the Jackson Pike WWTP. It does not specify, however, which of the three subparagraphs of Part III.3. is or are alleged to have been violated. Rather, like many other portions of the notice letter, this portion of the notice letter forces the recipients to attempt to determine for themselves the particular activity or omission being alleged to have violated Part III.3 of the permit. The Complaint, at paragraph 33, unlike the notice letter, clarifies that the Defendants are alleged to have violated only Paragraph III.A. Since the notice letter failed to provide sufficient information for the recipients to determine that this was the violation being alleged, the Court finds that the Plaintiffs failed to provide proper notice of the allegations set forth in paragraph 33 of the Complaint.

Finally, the notice letter alleges that the City violated, and continues to violate, Part III.11. of the NPDES Permit for the Jackson Pike WWTP, which relates to unautho-

---

NPDES permit. The text of paragraph 31, however, makes clear that the Plaintiffs intended to refer to Part II.E., as the violations set forth in paragraph 31 are violations of

Part II.E., not Part II.F. Therefore, the Court interprets this as a typographical error, and presumes that paragraph 31 of the Complaint is intended to refer to Part II.E.

rized discharges. The notice letter does not specify, however, which of the five subparagraphs is or are alleged to have been violated. The notice letter does not provide the recipients sufficient information to determine whether they are alleged to have bypassed or diverted wastewater from the treatment works even when doing so was not unavoidable to prevent loss of life, personal injury, or severe properly damage, whether they are alleged to have bypassed or diverted wastewater from the treatment works even though there was a feasible alternative to the bypass, whether they are alleged to have failed to submit prior notice when they knew in advance of the need for a bypass, whether they are alleged to have submitted prior notice but not at least ten days before the date of the bypass, or, finally, whether they are alleged to have failed to submit notice of an unanticipated bypass. Rather, the language of the notice letter lacks sufficient information regarding this alleged violation, and leaves the recipients without the ability to determine the activity or omission that is alleged to have violated this part of the permit. Accordingly, the Plaintiffs failed to provide the Defendants sufficient notice of the allegations set forth in paragraph 34 of the Complaint, which alleges violations of Part III.11 of the permit.[16]

### 3. General Allegations Purportedly Based on the May 21, 2002 Notice Letter

Paragraph 35 of the Complaint states that, "over the past 5 years, there were hundreds of days of illegal by-passes at the Jackson Pike and Southerly treatment plants, representing billions of gallons of raw, untreated sewage discharged into the waters of the United States in violation of the Defendants' NPDES permits." The Plaintiffs assert that the notice letter provided sufficient information to the recipients to make them aware of this allegation because, in identifying the individuals who intended to bring claims, the notice letter stated that those individuals' use of various rivers in Ohio had been impaired by "discharges of raw sewage from CSOs and POTW by-pass discharges directly and indirectly" into the waters of the United States. Neither the notice letter, nor even the Complaint, however, provide information regarding the date or dates and location or locations of these alleged illegal bypasses, as required by 40 C.F.R. § 135.3. Moreover, neither the notice letter nor this paragraph of the Complaint specifies the particular standard, order, or limitation violated by the Defendants' alleged conduct. Therefore, the Court finds that the Plaintiffs failed to provide the notice required with respect to the allegation set forth in paragraph 35 of the Complaint.

Similarly, paragraph 36 of the Complaint states that, "Defendants' violations . . . have caused and/or contributed to violations of state water quality standards in the Scioto, Olentangy and other waters of the United States, particularly, but not limited to, violations of a bacterial nature (e.coli and fecal coliform) due to overflows of raw, untreated sewage." At no point in the notice letter is there a reference to violations of state water quality standards in Ohio rivers, and at no point in the notice letter is there a reference to violations of a bacterial nature. Accordingly, the Defendants could not have received sufficient notice from the notice letter as to the particular standard, order, or limitation

---

**16.** The Court recognizes that the Complaint actually refers to Part III.10 of the permit. The Court agrees with the Plaintiffs, however, that, as paragraph 34 of the Complaint specifically alleges violations of the part of the permit dealing with "unauthorized discharges," the reference to Part III.10 was simply a typographical error, and was clearly intended to refer to Part III.11.

they were alleged to have violated in this regard. Indeed, the Defendants were not put on notice that any allegation relating to a violation of state water quality standards would be part of the citizen complaint that might be filed against them. Therefore, the Court finds that the Plaintiffs failed to provide the notice required with respect to the allegation set forth in paragraph 36 of the Complaint.

### B. May 23, 2002 Notice Letter

The May 23, 2002 notice letter indicates the intent of various parties to file a citizen lawsuit against the City for the City's violation of NPDES Permit No. 4PI00000*AD ("MS4"), which pertains to the MS4 system. As indicated above, the letter contains a general description of the Sierra Club and four individual members, and how their use of various Ohio rivers and streams has been affected by the alleged violations of the MS4 permit. The letter then contains one paragraph that purports to set forth the specific manner in which the permit has been violated:

> The City of Columbus has been and is in violation of the above-referenced NPDES permit for maintaining hundreds of illegal cross-connections from the City's sanitary sewer system into the MS4 and by failing to comply with Part I, para. C, and Part II. C Annual Report, Part III, paras. A.1.a, A.1.d, Part V.A.1, Part VI A and G of Ohio EPA Permit No. 4PI00000*AD.

■ In their Complaint, the Plaintiffs set forth one paragraph with ten subparagraphs regarding the Defendants' alleged violation of the MS4 NPDES permit. The Court finds, for the reasons discussed below, that the May 23 notice letter was insufficient to put the Defendants on notice that the allegations set forth in the Complaint within these ten subparagraphs might be brought against them by the Plaintiffs for their alleged violations of the MS4 NPDES permit.

First, paragraph 37.1 of the Complaint alleges that the Defendants have violated and continue to violate Part I.B.2 of the MS4 permit by permitting unauthorized discharges to the MS4 system. The May 23, 2002 notice letter makes no reference to a violation of Part I.B.2 of the MS4 permit. Even if the Court were to presume that the text of the letter indicates a violation of the requirements of Part I.B.2, the letter would nonetheless fail to provide the Defendants notice of the particular standard, limitation, or order they are alleged to have violated by their actions or omissions. Therefore, the Court finds that the Plaintiffs failed to provide the notice required for the allegation set forth in paragraph 37.1 of the Complaint.

Second, paragraph 37.2 of the Complaint alleges that the Defendants violated Part I.C. of the MS4 permit by permitting point source discharges of raw, untreated sewage into the MS4 system without first obtaining a separate NPDES permit for each said discharge. The May 23, 2002 notice indicates the Plaintiffs' intent to bring suit based on this violation. The notice letter, however, fails to inform the Defendants of either the dates or dates or location or locations of any alleged improper discharges into the MS4 system. Accordingly, the letter failed to provide the notice required by 40 C.F.R. § 153.3 for the allegation set forth in paragraph 37.2 of the Complaint.

Third, as alleged in paragraph 37.3 of the Complaint, the notice letter states that Plaintiffs' intend to bring a citizen suit for violation of Part II.C. of the MS4 permit, entitled "Annual Report." Part II.C. of the permit contains nine separate paragraphs, each setting forth specific information that was to be contained in a report that was to be submitted to the Central Office of the Ohio EPA fourteen months after the effective date of the permit and

annually thereafter. The notice letter does not indicate, however, whether the alleged violation is based on the failure of the Defendant to submit the report, the failure to include the particular information that was required by any or all of the nine paragraphs of Part II.C., or the provision of false or inaccurate information that was required by any or all of the nine paragraphs of Part II.C. After reading the notice letter, the Defendants are left to determine for themselves which, if any, of the nine paragraphs they might have violated and which, if any, report contained the violation or violations. Accordingly, the notice letter failed to provide sufficient information to inform the Defendants of the particular standard, limitation, or order they were alleged to have violated by their actions or omissions, and, which activity or activities constituted the alleged violations. Therefore, the notice letter failed to provide the notice required for the allegation set forth in paragraph 37.3 of the Complaint.

Fourth, the notice letter states, and the Complaint alleges at paragraphs 37.6 and 37.7, that the City violated and continues to violate Part III., paragraphs A.1.a and A.1.d of the MS4 permit. Part III., paragraph A.1.a. states that the "Permittee shall prohibit any discharge to the MS4 which is not authorized by Part I.B. of the permit." The notice letter, however, fails to provide the Defendants with sufficient information to determine the date or dates and location or locations on which any alleged improper discharge into the MS4 system occurred. Part III., paragraph A.1.d. of the MS4 permit provides that the Permittee shall conduct field screening for the presence of prohibited discharges to the MS4 system, shall advise persons identified as causing illicit discharges either to cease them or to contact the Ohio EPA for a permit, and shall notify the Ohio EPA of any continuing discharges. The notice letter, however, fails to indicate whether the

Defendants are alleged to have failed to conduct field screening, whether they are alleged to have failed to advise the persons identified as having caused illicit discharges, whether they are alleged to have failed to notify the Ohio EPA of continuing discharges, or all of the above. As such, the notice letter failed to provide the Defendants with sufficient information for them to determine either the specific standard, limitation, or order they are alleged to have violated or the activity alleged to have constituted the violation.

Moreover, while the notice letter alleges only violations of these two specific paragraphs of Part III of the permit, the Complaint, at paragraphs 37.4 and 37.5, also allege general violations of Part III of the permit by virtue of the City's alleged failure to implement a proper Storm Water Management Program and failure to develop a watershed planning process. Because the notice letter alleged violations of only Part III, paragraphs A.1.a and A.1.d, the Plaintiffs failed to provide adequate notice to the Defendants that they intended to bring a citizen suit for violations of the general paragraphs set forth in Part III. Hence, the Court finds that the notice letter failed to provide sufficient information to put the Defendants on notice of the allegations set forth in paragraphs 37.4, 37.5, 37.6, and 37.7 of the Complaint.

Fifth, the notice letter states that the City violated and continues to violate Part V.A.1 of the MS4 permit. Part V.A.1 of the MS4 permit provides that, when the Permittee is informed that there is a potential illicit discharge into the MS4 system, the Permittee is required to conduct field screening of the location of the potential illicit discharge for various parameters, and is also required to conduct a chemical analysis for various chemicals, using a field kit. The notice letter, however, does not specify the dates or locations at which

there were illicit discharges into the MS4 system but field screening was not performed. Furthermore, the notice letter does not indicate whether, in fact, the Defendants allegedly violated this provision by failing to perform the field screening, or whether they are alleged to have violated this provision by failing to screen for all of the parameters specified, by failing to conduct a chemical analysis of all chemicals specified, or by failing to use the required field kits. It is only by reading the Complaint, at paragraph 37.8, that the Defendants can determine that they are alleged to have violated Part V.A.1 of the MS4 permit by failing to perform field screening at all known and potential points of illegal discharge to the MS4 system.[17] Thus, the notice letter failed to provide sufficient information to put the Defendants on notice of the allegation set forth in paragraph 37.8 of the Complaint.

Sixth, the notice letter states that the City has violated and continues to violate Part VI.A. of the MS4 permit. Part VI.A. of the permit, which sets forth the requirements for notifying the Ohio EPA in the event of a discharge from the MS4 system that is beyond the City's control and is believed to threaten the receiving water and the public health, contains six paragraphs, some of which contain as many as eight subparagraphs. The notice letter gives no indication of which of these many paragraphs and subparagraphs has or have allegedly been violated. Furthermore, the letter gives no indication of the date or dates and location or locations of any alleged discharge that would have necessitated compliance with these notification guidelines. Paragraph 37.9 of the Complaint alleges that the Defendants violated Part VI.A. of the permit by failing to notify the Ohio EPA for each illegal discharge of raw sewage to the MS4 system

as required by the Part of the permit. For the foregoing reasons, the Court finds that the notice letter failed to provide sufficient information to put the Defendants on notice of the allegation set forth in paragraph 37.9 of the Complaint.

Finally, the notice letter states that the City violated and continues to violate Part VI.G. of the MS4 permit. Part VI.G. of the permit states that the "Permittee shall take all reasonable steps to reduce or prevent any discharge that is in violation of this permit." The notice letter did not provide sufficient information for the recipients to determine the activity or omission alleged to constitute a violation of this provision as it did not specify whether the Defendants were alleged to have violated this provision by failing to prevent a particular discharge, by failing to mitigate the effects of a particular discharge, or both. Additionally, the notice letter failed to set forth the particular date or dates and location or locations of any alleged discharge for which the Defendants failed to take reasonable steps to either prevent or mitigate the results thereof. Paragraph 37.10 of the Complaint alleges that the Defendants violated this provision because they "failed and fail to take all reasonable steps to reduce or prevent any discharges that are in violation of the MS4 permit." The Court finds that the notice letter failed to include sufficient information to put the Defendants on notice of the allegation set forth in paragraph 37.10 of the Complaint.

Therefore, the Court finds that the notice letter failed to contain sufficient information to put the Defendants on notice of the allegations set forth in paragraph 37, subparagraphs 1 through 10, of the Complaint.

---

**17.** Even the Complaint itself, however, fails to indicate the dates or locations of the alleged illegal discharges for which field screening was not performed.

## C. Remaining Issues

In addition to setting forth allegations that pertain to violations of particular provisions of the City's NPDES permits, the Complaint contains a number of paragraphs that set forth general allegations pertaining to the Defendants' alleged wrongdoing. The Defendants argue that the notice letters failed to provide the City with any notice whatsoever as to these allegations and, therefore, that they must be dismissed. The Plaintiffs, however, assert that the Defendants were put on notice of these general allegations by virtue of the entire text and tenor of the notice letters, as well as specific statements contained therein, such as the statements indicating that certain individuals' use of Ohio rivers and streams has been "impaired by the City's violations of its ... NPDES permit[s] ... and by discharges of raw sewage ... directly and indirectly into those water bodies."

As discussed in detail above, neither these purportedly specific statements, nor the general text of the notice letters provide the Defendants with sufficient information to determine the specific limitation(s) or standard(s) that they are alleged to have violated. Rather, the statements in the notice letter are fairly vague, and do not serve the intended purposes of providing sufficient information that would allow government agencies to evaluate fully and adequately the violations alleged, and thereby to determine their appropriate level of involvement, and allow the recipient the opportunity to cure the violations before suit is brought, thereby obviating the need for costly litigation. Furthermore, the letters failed to provide any information regarding the date or dates and location or locations of any alleged violation, as required by the regulation.

Moreover, as the Defendants argue, neither of the notice letters provided sufficient information for the recipients to determine the full name, address, and telephone number of the persons giving notice, as required by 40 C.F.R. § 135.3. With regard to the Sierra Club, the letters made varying references to the national organization known as the Sierra Club, the Sierra Club Central Ohio Group, and the Central Ohio Sierra Club. Although the Plaintiffs assert that they are not obligated to explain the interrelationship of its organizational structure, this argument ignores the fact that the Plaintiffs must strictly adhere to the notice requirements of the statute and the regulation. The Plaintiffs failed to comply strictly because the recipients of the notice letter could not determine which Sierra Club organization was providing notice.[18]

■ With respect to the individuals bringing notice, although the notice letters did set forth their addresses, their phone numbers were not provided. The Plaintiffs argue that the notice letters nonetheless provided sufficient information for the recipients to determine the phone numbers of the individuals giving notice because they could have looked up the telephone numbers in the phone book, they could have called directory assistance, or they could have asked either Patricia Marida or Plaintiffs' counsel for the phone numbers. This argument, however, ignores the fact that case law from the Sixth Circuit and from this Court requires the individuals giving notice to comply strictly with the statutory and regulatory notice requirements. *Atl. States Legal Found. v. United Musical Instruments*, 61 F.3d 473, 478 (6th Cir.1995); *Frilling v. Village of Anna,*

---

18. Interestingly, the named Plaintiff in the Complaint is not the Sierra Club, the Sierra Club Central Ohio Group, or the Central Ohio Sierra Club, but the Sierra Club Ohio Chapter.

924 F.Supp. 821, 833 (S.D.Ohio 1996). Thus, despite the Plaintiffs' assertion that the Defendants' argument regarding the failure to provide sufficient information to determine the full names, addresses, and phone numbers of the persons giving notice "fails the straight-face test," in fact, the Plaintiffs' failure to provide this information in a clear manner is reason enough to dismiss their Complaint for lack of jurisdiction.

Therefore, the Court finds that the notice letters failed to provide the notice required by 33 U.S.C. § 1365 and 40 C.F.R. § 135.3 for any additional allegations set forth in the Plaintiffs' Complaint regarding the Defendants' alleged violation of the federal Clean Water Act.

### D. May 23, 2002 Notice Letter and the Sixty–Day Notice Period

Based on the Court's conclusion that the May 23, 2002 notice letter failed, in its substance, to comply with the notice requirements of 33 U.S.C. § 1365 and 40 C.F.R. § 135.3, the Court need not examine the parties' arguments regarding whether the filing of the second Complaint cured the Plaintiffs' failure to wait the sixty-day notice period before filing their first Complaint with this Court. Even if the filing of the second Complaint would have cured that error, the Complaint would nonetheless have to be dismissed for lack of jurisdiction based on the failure to comply with the substantive notice requirements.

### E. State Law Claims

In addition to asserting claims under the federal Clean Water Act, the Plaintiffs allege that the Defendants' conduct violated state law. Because the Court finds that it must dismiss the Plaintiffs' federal claims based on a lack of jurisdiction over those claims, the Court cannot assert supplemental jurisdiction over the state law claims.

Therefore, the Court **GRANTS** the Defendants' Motions to Dismiss the Plaintiffs' state law claims.

### V. CONCLUSION

Based on the foregoing analysis, the Court concludes that it lacks jurisdiction over these matters based on the Plaintiffs' failure to provide the pre-litigation notice required by 33 U.S.C. § 1365 and 40 C.F.R. § 135.3. Therefore, the Court **GRANTS** the Defendants' Motions to Dismiss the Plaintiffs' Complaints for lack of jurisdiction.

**IT IS SO ORDERED.**